# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Ames*, 2012 IL App (4th) 110513

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY L. AMES, JR., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0513 |
| Filed | October 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's case was remanded for a new hearing on the revocation of court supervision imposed following his guilty plea to a charge of driving under the influence of alcohol, since the trial court essentially forced defendant to represent himself at the hearing resulting in the revocation of supervision by not continuing to offer court-appointed counsel and by failing to admonish defendant about the waiver of counsel pursuant to Supreme Court Rule 401(a). |
| Decision Under Review | Appeal from the Circuit Court of Menard County, No. 09-DT-36; the Hon. Thomas J. Brannan, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Allen H. Andrews, all of State Appellate Defender's Office, of Springfield, for appellant.

Kenneth R. Baumgarten, State's Attorney, of Petersburg (Patrick Delfino, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Appleton and Cook concurred in the judgment and opinion.

## OPINION

¶ 1    In September 2009, the State charged defendant, Jerry L. Ames, Jr., with driving under the influence of alcohol with a blood or breath alcohol concentration of 0.08% or more (625 ILCS 5/11-501(a)(1) (West 2008)) (count I) and driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2008)) (count II). In March 2010, defendant pleaded guilty to count II, and the trial court sentenced him to one year of supervision. In May 2011, the court revoked defendant's supervision and resentenced him to 18 months' probation and ordered him to serve 60 days in the county jail.

¶ 2    Defendant appeals, arguing that the trial court (1) did not properly admonish him pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before he represented himself at the May 2011 revocation hearing and (2) improperly imposed a $500 DUI fine. Because we conclude that the court erred by forcing defendant to proceed *pro se*, we reverse and remand for a new revocation hearing.

¶ 3                    I. BACKGROUND

¶ 4    In September 2009, the State charged defendant with driving under the influence of alcohol with a blood or breath alcohol concentration of 0.08% or more (count I) and DUI (count II). In October 2009, the trial court appointed attorney Kevin Tippey to represent defendant.

¶ 5    In March 2010, defendant pleaded guilty to count II, the DUI charge. In exchange for his guilty plea, the State agreed to dismiss count I. The trial court later sentenced defendant to one year of supervision and ordered him to pay a $500 DUI assessment. As a condition of supervision, the court also ordered him to commence alcohol treatment within 60 days.

¶ 6    In October 2010, the State filed a petition to revoke supervision, alleging that defendant (1) committed a new DUI and (2) failed to commence alcohol treatment within 60 days of

the March 2010 order. In November 2010, the trial court again appointed Tippey, this time to represent defendant on the State's petition to revoke.

¶ 7 On March 11, 2011, Tippey filed a motion to withdraw, asserting that Tippey and defendant "had a significant disagreement on how best to proceed with the investigation and court process" and their recent "conference ended after a heated discussion in which [defendant] fired [Tippey] and [Tippey] agreed that [his] representation should be terminated due to the toxic nature of the discussion and the status of representation due to allegations made by [defendant]."

¶ 8 On March 15, 2011, the trial court conducted a hearing on Tippey's motion to withdraw. Defendant denied that he had "fired" Tippey, explaining that he told Tippey he would talk to the court and "discuss what's been going on with [the] case[,] which is absolutely nothing." Tippey responded as follows:

"I tried to take [defendant's] ideas[,] which are not necessarily on the beaten path as far as a criminal defense for a DUI. Research them and get back to him. When I tell him that I don't think that's how it's going to work, how he desires it to work, he does not like that. I clearly remember him in a heated moment telling me I was fired and that I work for him. He doesn't work for me and that I would be fired, I was fired. *** I like [defendant]. But things reached such a level [that this] has the ability to be a toxic situation. I did tell him that [a relative passed away]. That it's tax season. That I was having trouble getting him in to review a video that he wants to review, which I was going to do Saturday passed [*sic*], had a funeral. Due to the length of the video, the nature of it, I would need to have him come in after hours or on a Saturday to review it. I believe that probably led to part of the anxiety with [defendant] but like I said, I think things reached a point where I would not feel comfortable representing [him] and he probably doesn't feel comfortable with my representation."

¶ 9 When the trial court asked Tippey whether he believed that he could adequately represent defendant in light of the things that have transpired, Tippey responded, "It would be tough, judge."

¶ 10 The State objected to the motion to withdraw, explaining as follows:

"Unfortunately, defendants don't like the advice that their counsel give them. However, their counsel spend [a] considerable amount of time reviewing cases and base their professional opinion on the laws that apply to the facts of the particular case. *** Mr. Tippey did give [defendant] his professional judgment and [defendant] does not like that."

¶ 11 The prosecutor also pointed out that the matter was set for hearing in the near future, and he was anxious to have the case go forward. In response, defendant again asserted his unhappiness with Tippey's representation.

¶ 12 The trial court granted Tippey's motion to withdraw and appointed attorney Judith Lozier to represent defendant. Defendant responded to that appointment by stating that Lozier had represented him before and "I have a conflict with her." The court reaffirmed the appointment of Lozier despite defendant's misgivings, explaining to defendant that "it is not uncommon for a client to maybe disagree with what their [*sic*] attorney does or does not

-3-

recommend."

¶ 13    Six weeks later, on May 3, 2011, Lozier filed a motion to withdraw as counsel, asserting that she had "met with [defendant] and [had] spoken to him on the phone several times and *** [had] not been able to communicate effectively with him nor have *** any meaningful discussions regarding his defense." Further, Lozier alleged "defendant has never been cooperative with me nor has he been willing to listen to legal advice from me."

¶ 14    The trial court conducted a hearing on Lozier's motion to withdraw at which she explained the basis for the motion, as follows:

"I don't think that [defendant] is interested in any legal advice from me. I have tried to talk to him several times about his case. He argues with me. He questions anything that I have to say. I don't think that he really–that there is any way that I could effectively assist in his defense at this point. Therefore[,] I think that the only thing to do is to withdraw and let him proceed as he wishes."

¶ 15    In response to Lozier's remarks, the State had no objection to her being allowed to withdraw but "would ask that we proceed on a short court date *** because [defendant] went down this road with Mr. Tippey earlier. *** [Defendant] has had the benefit of two experienced counsel [and] he doesn't seem to want to take their advice, and if that's the case, Judge, I would say he should proceed on his own."

¶ 16    Defendant then informed the trial court that the only advice both lawyers had given him was "pretty much you have to take whatever the prosecutor says." He asserted that Tippey had "done absolutely nothing," and all Lozier had done is yell at him. The court then asked whether defendant objected to Lozier's withdrawal, and the following exchange occurred:

"[DEFENDANT]: No sir, I–I can't see–

[THE COURT]: If she does withdraw, you are going to represent yourself then.

[DEFENDANT]: Well, I guess I'm going to have to.

[THE COURT]: Well, I mean we can still appoint counsel for you, but it doesn't sound like you have very good luck in getting along with counsel. Sometimes, the attorney cannot tell the client what the client wants to hear.

***

The bottom line is do you object if I allow Ms. Lozier's motion to withdraw?

[DEFENDANT]: No, I don't."

The court thereafter granted Lozier's motion to withdraw and asked defendant whether he was going to represent himself. Defendant responded, as follows:

"[DEFENDANT]: Well, sir, at this time I think that's my only option.

[THE COURT]: Well, as I say, we can still–

[DEFENDANT]: I don't have anybody else.

[THE COURT]: So, you don't wish to retain counsel, and you don't wish to have court appoint counsel, is that correct?

[DEFENDANT]: Well, sir, I'd like to have counsel but I have got to be able to do it, and I'm just now getting on my feet.

THE COURT: [Defendant], let's try to stay on point here for a minute. Are you saying that you want to retain an attorney?

[DEFENDANT]: I'd like to but I–I'm not sure if I'm able to.

THE COURT: Well, how about if we set this over for approximately one week. Give you time to retain an attorney.

[DEFENDANT]: Well, hopefully we can do that."

¶ 17 The prosecutor objected to the continuance, explaining that he had witnesses present, and it seemed to him that "for lack of a better phrase, [defendant] is [']playing the system.['] I mean, if he wants to proceed to hearing today, I'm ready to do it."

¶ 18 The trial court then asked defendant whether he wished to proceed to hearing that day, and he responded as follows: "Actually, your honor, I'd like to talk to somebody that is more knowledgeable than I in the court proceedings."

¶ 19 The trial court then continued the matter for two weeks for defendant "to get an attorney or represent [him]self." The court concluded the proceedings with the following statement to defendant: "Please don't do yourself a disservice. Come that day either with your attorney or be prepared to try this."

¶ 20 On May 17, 2011, the trial court opened the hearing on the petition to revoke supervision by asking defendant, "You're going to represent yourself in this matter, is that correct?" Defendant replied, "Well sir, I'd like to have an attorney," and explained that he was unable to hire an attorney because he had been out of work with pneumonia for nine days and did not have the money to hire an attorney. Defendant then asked for time to retain an attorney, explaining that because of the good weather, he now had offers of work. He acknowledged, however, that he did not at that moment have funds with which to hire an attorney. The State objected to any further continuances. The court agreed with the State, explaining as follows:

"[Defendant,] when you were in court before, you indicated that you were either going to represent yourself or retain counsel, and you're submitting to the Court today that basically right now you wouldn't have the funds to retain counsel. So, in other words, I can only assume that even if you [had not been sick during the last eight or nine days] that you wouldn't have been able to retain counsel, and you did indicate to the Court that you're going to be representing yourself. So, I am going to deny the motion to continue."

¶ 21 The trial court then conducted the hearing on the October 2010 petition to revoke supervision and required defendant to represent himself. At the conclusion of the hearing, the court found that defendant had violated the terms of the March 2010 supervision order.

¶ 22 Two days later, the trial court conducted a resentencing hearing, and defendant again appeared without counsel. The court revoked defendant's supervision, resentenced him to 18 months' probation, and required as a condition thereof that he serve 60 days in the county jail.

¶ 23 This appeal followed.

¶ 24                                II. ANALYSIS

¶ 25 Defendant argues that the trial court (1) did not properly admonish him pursuant to Rule

401(a) before he represented himself at the May 2011 revocation hearing, and (2) improperly imposed a $500 DUI fine. Because we conclude that the court erred by requiring defendant to represent himself, we reverse and remand for a new revocation hearing.

¶ 26    Defendant's essential claim is that he wanted to be represented by counsel at the hearing on the State's motion to revoke his supervision but, instead, was forced to represent himself. The State responds that defendant was properly required to do so. Resolving this dispute requires us first to discuss the circumstances in which a defendant in a criminal case may represent himself at trial. Although the right to counsel is a constitutional requirement, it may be relinquished in three ways: (1) waiver, (2) forfeiture, and (3) waiver by conduct. *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009); *State v. Pedockie*, 137 P.3d 716, 721 (Utah 2006); *United States v. Goldberg*, 67 F.3d 1092, 1099-1101 (3d Cir. 1995). We will discuss each in turn.

¶ 27                    A. Waiver of Counsel

¶ 28    In *Gallagher v. Lenart*, 226 Ill. 2d 208, 229, 874 N.E.2d 43, 56 (2007), the Supreme Court of Illinois explained that a waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right. The court further explained that forfeiture, strictly defined, is different from waiver because instead of being an intentional relinquishment of a known right, forfeiture is the failure to make the timely assertion of the right. *Id.* In *People v. Blair*, 215 Ill. 2d 427, 443, 831 N.E.2d 604, 615 (2005), the supreme court made the same points in a criminal case and in so doing cited approvingly a decision by this court in *People v. Corrie*, 294 Ill. App. 3d 496, 506, 690 N.E.2d 128, 134 (1998).

¶ 29    Thus, when a defendant in a criminal case wishes to waive his right to counsel–that is, to proceed *pro se*–a trial court may permit him to do so only after the court has first admonished him in accordance with Rule 401(a), entitled, "Waiver of Counsel," which provides as follows:

"(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

The purpose of Rule 401(a) is to ensure that any waiver of counsel will constitute the intentional relinquishment of a known right.

¶ 30    To further ensure that a defendant's attempt to waive counsel and represent himself is the intentional relinquishment of a known right, this court in *People v. Ward,* 208 Ill. App. 3d 1073, 1081-82, 567 N.E.2d 642, 647-48 (1991), suggested certain additional cautionary

admonitions that a trial court may use. A court's doing so has the double benefit of (1) occasionally discouraging a defendant from proceeding *pro se* (once he learns how difficult defending himself will be) and (2) making a comprehensive record of the defendant's knowing choice if he persists in waiving counsel, only to later claim (as frequently happens) after he has been tried and convicted that he should not have been permitted to waive counsel because he did not really understand the consequences of his having done so. Over the last 20 years, this court has seen many instances in which trial courts have used our suggestions in *Ward*, and we continue to urge trial courts to do so.

¶ 31                    B. Forfeiture of the Right to Counsel

¶ 32    Another method of relinquishing the right to counsel is forfeiture, which occurs only after severe misconduct. An example of such misconduct occurred in *United States v. McLeod*, 53 F.3d 322, 324-25 (11th Cir. 1995), where the court rejected the defendant's claim that he was unconstitutionally denied his right to counsel when he was forced to proceed *pro se*. In *McLeod*, the trial court conducted a hearing on the defense attorney's motion to withdraw at which the attorney testified that the defendant was verbally abusive, threatened to harm him, repeatedly threatened to sue him, and had attempted to persuade him to engage in unethical conduct in connection with the case. *McLeod*, 53 F.3d at 325. The court concluded that defendant, by virtue of his pervasive misconduct, had forfeited his right to counsel. *McLeod*, 53 F.3d at 326. See also *Commonwealth v. Thomas*, 879 A.2d 246, 258 (Pa. Super. Ct. 2005) (where the court concluded that the defendant forfeited his right to counsel "through his pattern of serious misconduct, abuse, threats, and utter failure to collaborate in his own defense"). In *State v. Hampton*, 92 P.3d 871, 874 (Ariz. 2004), the Arizona Supreme Court reviewed the case law and concluded that forfeiture is reserved for the most severe cases of misconduct and should result only when less restrictive measures are inappropriate.

¶ 33                     C. Waiver of Counsel by Conduct

¶ 34    The Third Circuit Court of Appeals in *Goldberg* described "waiver by conduct" as a hybrid situation that combines elements of waiver and forfeiture. The *Goldberg* court explained this situation, as follows:

> "Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel. ***
>
> * * *
>
> These are not 'waiver' cases in the true sense of the word. In many situations[,] there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be 'waiving' their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se*. See *United States v. Fazzini*, 871 F.2d 635 (7th Cir. [1989]) (defendant who was warned about consequences of dilatory conduct insisted he was not waiving his right to counsel), *cert. denied*, 493 U.S. 982, 110 S. Ct. 517, 107 L. Ed. 2d 518 (1989)." *Goldberg*, 67 F.3d

at 1100-01.

¶ 35    We believe this analysis is sound and adopt it for our case, which we conclude involves waiver of counsel by conduct. We also agree, however, with the view of the Minnesota Supreme Court that "[t]he same colloquy required for affirmative waivers must also be given before a defendant can be said to have waived his right to counsel by conduct." *Jones*, 772 N.W.2d at 505. Thus, we need to decide whether this record supports the trial court's conclusion that defendant waived his right to counsel by his conduct.

¶ 36                    D. Waiver of Counsel by Conduct in This Case

¶ 37    One of the differences between waiver of counsel by conduct and forfeiture of counsel is that the latter may occur because of a defendant's severe misconduct without the defendant's first having been warned of the consequences of his engaging in that severe misconduct. A trial court has the discretion to determine that the defendant's misconduct was so severe (such as physically attacking his defense counsel) that no warning of forfeiture of counsel was necessary or foreseeable before the court concludes that the defendant has forfeited his right to counsel and will be required to henceforth represent himself.

¶ 38    On the other hand, with regard to waiver of counsel by conduct, the misconduct at issue usually occurs over a lengthy period of time. For a trial court to conclude that waiver of counsel by conduct has occurred in the case before it, the court must first comply with the requirements of Rule 401(a), explaining to the defendant what is at stake if his conduct continues. Indeed, in the present case, the trial court could have–and should have–repeatedly admonished defendant pursuant to Rule 401(a). The court should also have emphasized that his conduct could constitute his waiver of counsel. Because the court never admonished defendant pursuant to Rule 401(a), its implicit finding of waiver of counsel by conduct cannot stand, and the court committed reversible error.

¶ 39    In so concluding, we note with approval the following statement from the Ohio Appellate Court: " 'A court is under no less obligation to ensure that waiver is knowing and intelligent when voluntariness is deduced from conduct than when it is asserted expressly.' " *State v. Weiss*, 637 N.E.2d 47, 50 (Ohio Ct. App. 1993) (quoting *United States v. Allen*, 895 F.2d 1577, 1579 (10th Cir. 1990)). Such a conclusion is consistent with the importance of the right to counsel, as the Fifth District Appellate Court recently explained: "The right to counsel is a cornerstone of our criminal justice system. This right is enshrined in both the United States Constitution and the Illinois Constitution. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 8. *** The gravity of a waiver [of counsel] requires a trial court to fully inform a defendant of both the nature of the right being abandoned and the consequences of the decision." *People v. Black*, 2011 IL App (5th) 080089, ¶ 11, 953 N.E.2d 958.

¶ 40    In reaching this decision, we have considered what the Supreme Court of Illinois wrote 30 years ago in *People v. Williams*, 92 Ill. 2d 109, 118, 440 N.E.2d 843, 847 (1982):

        "[W]here a defendant who is financially able to engage counsel has been instructed to do so within a certain and reasonable time, but he fails to do so and does not show reasonable cause why he was unable to secure representation, the court may treat such a failure as a waiver of the right to counsel and require him to proceed with the hearing."

¶ 41    Although the supreme court did not use the phrase "waiver of counsel by conduct," its decision in *Williams* embodies that concept. But, as shown in *Williams*, the circumstances must be extreme. For instance, the defendant in *Williams* complained that he was denied due process when the trial court denied his request for a continuance to obtain counsel and forced him to defend himself at his felony drug trial. Rejecting this argument, the supreme court explained that "the trial court's denial of the request to delay the case further after 19 continuances was certainly not arbitrary and did not violate due process." *Williams*, 92 Ill. 2d at 118, 440 N.E.2d at 847. Further (and contrary to the circumstances of the present case), the supreme court noted that "[t]he record shows that the court informed the defendant of the rights set out in [Rule 401(a)]." *Williams*, 92 Ill. 2d at 119, 440 N.E.2d at 848. The supreme court in *Williams* also noted that the defendant "never requested the appointment of an attorney. Under those circumstances clearly there was no obligation to appoint counsel." *Id.*

¶ 42    The present case differs from the circumstances in *Williams* because, although defendant indicated that he was going to try to hire counsel of his own choice, he never rejected the idea of the trial court's appointing counsel for him. Indeed, the court did just that early in this case when it appointed both Tippey and Lozier to represent defendant. Only after the court granted their respective motions to withdraw as counsel did the problem arise about who would be representing defendant.

¶ 43                    E. Dealing With Difficult Defendants Regarding
                              Who Will Represent Them

¶ 44    We are not unsympathetic to the serious problem that this trial court and other trial courts encounter when dealing with difficult defendants regarding representation. The State's suggestion in this case that defendant might be "playing the system" by his claimed difficulty both in getting along with appointed counsel and in failing to hire an attorney of his own choice may have been right, but trial courts must still handle such situations with extreme care for at least two reasons: (1) a defendant's right to counsel is a fundamental constitutional right and (2) if a court makes a mistake regarding this issue, it will constitute reversible error. In other words, if a court of review determines that the trial court improperly forced a defendant to represent himself at trial, there is no such thing as "harmless error." Reversal will occur, no matter how otherwise error-free the proceedings may have been.

¶ 45    As a result of these concerns, we offer the following suggestions to trial courts dealing with difficult defendants regarding representation.

¶ 46                              1. *Motions To Withdraw*

¶ 47    In most cases dealing with difficult defendants regarding representation, the difficulty manifests itself by a defendant's claimed inability to hire counsel. Although that situation occurred at a later point in this case, the circumstances here are somewhat unusual because the trial court initially appointed two different attorneys (Tippey and Lozier) at two different times to represent defendant. Defendant was unhappy with both of his two court-appointed attorneys. They, in turn, found their dealings with him to be unpleasant and unproductive, causing them to file motions to withdraw. We note that the court's decision to force

defendant to represent himself arose only after–and because–the court granted counsel's motions to withdraw.

¶ 48    We do not question the various assertions that both court-appointed counsel made in their motions to withdraw; we merely note that the circumstances those motions describe "come with the territory." That is, attorneys appointed to represent indigent defendants in criminal cases will rarely find their clients mistaken for Rotary Club members or other leading citizens of the community. Instead, their clients are frequently angry, ignorant, suspicious, and personally abusive toward their court-appointed counsel. Such is the reality of the criminal justice system. But, so what? Cases involving such clients must still go forward, and court-appointed counsel should understand that (1) they can do no more than their best under difficult circumstances and (2) in most instances, there is no reason to believe–as shown in this very case–that any other court-appointed attorney will be able to do better.

¶ 49    Trial courts should not hesitate to reject motions to withdraw filed by court-appointed counsel when those motions are based on the ground that the relationship between the defendant and counsel has become "poisonous" or unpleasant due to the defendant's bad behavior. Instead of granting such motions, the court should make clear to the defendant that (1) failing to cooperate with his counsel will hurt only the defendant and (2) the court will not replace counsel. Perhaps a graphic way of getting this point across is to explain that if the defendant is convicted and sentenced to prison, when the bus from the penitentiary comes to pick him up, only he will get on. His lawyer will go home.

¶ 50    Despite the difficulties court-appointed counsel may encounter representing an obstructionist defendant determined to interfere with an orderly and constructive attorney-client relationship, trial courts should almost never permit such counsel to withdraw from representing that defendant. A trial court's doing so only rewards and enables bad behavior. Courts delude themselves by thinking an obstructionist defendant is somehow going to behave better when a new court-appointed counsel enters the picture.

¶ 51    The issue in this case could have–and should have–been avoided. The trial court could have denied the attorneys' motions to withdraw. See Ill. S. Ct. R. 13(c)(3) (eff. Feb. 16, 2011) (a motion to withdraw "may be denied by the court if the granting of it would delay the trial of the case, or would otherwise be inequitable"); *People v. Howard*, 376 Ill. App. 3d 322, 342, 876 N.E.2d 36, 51 (2007) (when dealing with a motion to withdraw under Rule 13(c)(3), a trial court has "broad discretion").

¶ 52    2. *Trial Courts Should Offer To Appoint Counsel and Use Section 113-3.1*
*of the Code of Criminal Procedure of 1963 With Defendants Who*
*Claim They Cannot Hire Counsel*

¶ 53    Section 113-3.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1 (West 2010)) provides trial courts with the means of trying to persuade nonindigent defendants to hire lawyers of their own choice. Indeed, a primary purpose underlying that section, which authorizes trial courts to order defendants to pay a reasonable sum for the services of appointed counsel, was to address situations such as that in the present case. Trial courts can say to such a defendant that if he fails to hire an attorney of his own choice, the

court will appoint counsel and require the defendant to pay for the services of that counsel to the extent the court finds he is capable of doing so, with a possible maximum payment of $5,000 on a felony charge.

¶ 54    Experience shows that trial courts who utilize section 113-3.1 of the Code as we suggest will ultimately not have many defendants choosing court-appointed counsel when those defendants in fact have the means to hire their own attorneys. In handling those few defendants who are sufficiently stubborn to persist in their dubious claims of not being able to afford to hire private counsel, trial courts should resist distorting the important, fundamental right to counsel, guaranteed by the sixth amendment to the United States Constitution and article I, section 8, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 8), by engaging in some sort of contest of wills with these defendants and by making such defendants represent themselves. Instead, courts confronted with such a defendant should appoint counsel and utilize section 113-3.1 of the Code to its fullest, requiring that defendant to pay $5,000 for court-appointed counsel in an appropriate case.

¶ 55    Using this statute, a trial court should explain to a defendant (who has not waived his right to counsel pursuant to Rule 401(a) and clearly has no intent to voluntarily proceed *pro se* because he is "gaming the system") that he *will* be represented by counsel at trial. The only question is whether he will be represented by an attorney of his own choice or one appointed by the court, but either way he will likely wind up paying a considerable sum of money. The court should further suggest that, in view of these two choices, perhaps the defendant might want to reconsider his claimed difficulty in hiring an attorney of his own choice.

¶ 56    A prime example of a trial court's appropriately dealing with such a situation is shown in the recent decision of this court in *People v. Belk*, 403 Ill. App. 3d 1056, 936 N.E.2d 721 (2010). In *Belk*, the defendant was charged with two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2006)), and he privately retained counsel. *Belk*, 403 Ill. App. 3d at 1057, 936 N.E.2d at 722. After many continuances, his counsel filed a motion to withdraw, specifying, in part, that the defendant did not want counsel to continue to represent him and that there had been "irreconcilable differences" between counsel and defendant. At the hearing on counsel's motion, the trial court asked counsel if the defendant intended to hire new counsel, and counsel replied that he was uncertain. Counsel explained to the court that the defendant had told him defendant wanted to represent himself the last time they had spoken. *Id.* The trial court granted the motion to withdraw and continued the case for a few days to see if defendant was going to retain new counsel or proceed *pro se*. *Id.*

¶ 57    At the next hearing, the trial court told the defendant that he had three options: (1) retain new counsel of his choice, (2) have counsel appointed for him, if indigent, or (3) represent himself. In response to the court's questions, the defendant indicated he was going to be able to hire an attorney " 'within the next week or so.' " *Id.*

¶ 58    The trial court continued the matter for a month, and at the next hearing, the defendant informed the court that he had hired a new attorney. The State announced ready for trial, and the case was continued for another month for the appearance of the defendant's new attorney and for scheduling the trial. *Belk*, 403 Ill. App. 3d at 1057-58, 936 N.E.2d at 722.

¶ 59    At that next hearing, the defendant informed the trial court that he had not yet been able

to hire the new attorney. The court offered to appoint the public defender, but the defendant replied that he wanted "good counsel" and that was why he and his family were trying to raise money for private counsel. The court responded that public defenders are good lawyers and stated that if defendant did not have the money to hire this new lawyer, then his choice was to represent himself or accept appointment of the public defender. *Belk*, 403 Ill. App. 3d at 1058, 936 N.E.2d at 722-23. The trial court set a trial date for a month later whether defendant had private counsel or not and directed the State to provide all discovery to defendant. The court again offered to appoint the public defender, but the defendant declined. *Belk*, 403 Ill. App. 3d at 1058, 936 N.E.2d at 723.

¶ 60 When the trial court called the case for trial a month later, it first denied the defendant's *pro se* motion for continuance and declined the defendant's request for 60 more days to hire private counsel. The court informed defendant that his choice was now acceptance of the appointment of the public defender or proceeding *pro se*. The defendant refused appointment of the public defender. The court then gave the defendant the required admonitions for waiver of counsel pursuant to Rule 401(a). When it finished its admonitions, it again told defendant it would appoint counsel or defendant was going to go to trial and represent himself. Defendant again responded that he wanted more time to hire an attorney of his own choice. The court responded, " 'we're going to trial.' " *Belk*, 403 Ill. App. 3d at 1059, 936 N.E.2d at 723.

¶ 61 Thereafter, defendant represented himself at trial, was convicted, and was sentenced to three years in prison. On appeal, he contended that he did not waive his right to counsel and should not have been required to represent himself. This court emphatically rejected that contention, explaining, in part, as follows:

"The facts are undisputed. After defendant's original counsel was allowed to withdraw, the trial court repeatedly offered to appoint counsel for defendant if he could not afford to hire private counsel. Defendant repeatedly declined, stating he did not want the public defender appointed to represent him. The court repeatedly told defendant his choice was either the public defender or representing himself. Defendant still declined the appointment of counsel." *Belk*, 403 Ill. App. 3d at 1060, 936 N.E.2d at 724-25.

¶ 62 In conclusion, this court added the following:

"While defendant never used the words 'I waive my right to counsel,' his actions and words show waiver. He knew he could have counsel appointed but *chose* to represent himself. Given the context of the proceedings and the record, defendant clearly and unequivocally gave up his right to be represented by counsel." (Emphasis in original.) *Belk*, 403 Ill. App. 3d at 1061, 936 N.E.2d at 725.

¶ 63 The key feature of the trial court's handling of the difficult defendant in *Belk* was the court's repeated offer of court-appointed counsel if the defendant (as he claimed) was unable to hire counsel of his own choice. The court's doing so avoided the claim that defendant in the case before us was able to make–namely, that because he was unable to hire counsel of his own choice, the trial court forced him to represent himself at trial. Instead, had defendant here been offered court-appointed counsel yet again and refused the offer, then his position would have been much like that of the defendant in *Belk*. (We mention again, however, that

by itself this offer of counsel would not be enough. The trial court would also have needed to admonish defendant in accordance with Rule 401(a), as the court did in *Belk*.)

¶ 64    In praising how the trial court handled the defendant in *Belk*, we note two areas where the court could have done an even better job. First, for the reasons earlier discussed, we question whether the court should have granted the defendant's retained counsel's motion in *Belk* to withdraw. Perhaps a better course of action would have been to hold that motion in abeyance until such time (if ever) that new counsel entered his or her appearance on behalf of the defendant. The court could then also have explained that in the absence of such an appearance, the motion to withdraw would be denied, and privately retained counsel would be required to continue to represent the defendant. Regarding our earlier discussion about how trial courts should be very reluctant to grant motions to withdraw in criminal cases, we emphasize that we draw no distinction whatsoever between such motions, whether filed by court-appointed counsel or privately retained counsel.

¶ 65    Second, we suggest that the trial court in *Belk* could have mentioned section 113-3.1 of the Code, pointing out the likelihood that the defendant would be required to pay for the services of any court-appointed counsel. (This suggestion is not inconsistent with the supreme court's decision in *Williams* because when that case was decided, section 113-3.1 of the Code had not yet been enacted.) However, as the enthusiastic affirmance by this court in *Belk* demonstrates, these additional matters were not necessary for this court to approve of the trial court's decision to make the defendant in *Belk* represent himself at trial under the particular circumstances of that case.

¶ 66    F. Defendant's Claim That the Trial Court Improperly
Imposed a $500 DUI Fine

¶ 67    Defendant also contends that the trial court improperly imposed a $500 DUI fine. Specifically, defendant asserts that the fine is not authorized by section 11-501(c)(4) of the Illinois Vehicle Code (625 ILCS 5/11-501(c)(4) (West 2008)), as his breath alcohol concentration was not 0.16 or more. Because we have concluded that defendant is entitled to a new revocation hearing (and we presume the trial court will impose the appropriate statutorily authorized fines on remand in the event the court determines that defendant violated the terms of his supervision), we need not address the parties' contentions in this regard.

¶ 68    III. CONCLUSION

¶ 69    For the reasons stated herein, we reverse the trial court's judgment and remand for a new revocation hearing.

¶ 70    Reversed and remanded.