# Illinois Official Reports

## Appellate Court

***People v. Lesley*, 2017 IL App (3d) 140793**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MYRON T. LESLEY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0793 |
| Filed | March 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 12-CF-86; the Hon. Cynthia M. Raccuglia, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier and Tiffany Boye Green, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Karen Donnelly, State's Attorney, of Ottawa (Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justice McDade concurred in the judgment and opinion.<br>Justice Schmidt dissented, with opinion. |

**OPINION**

¶ 1        Defendant, Myron T. Lesley, raises two issues for our review. First, he argues that the trial court erred in forcing him to represent himself at his evidentiary hearing due to disagreements he had with his appointed counsel without first warning defendant that his conduct could result in the waiver of his right to counsel. Second, he contends that the trial court applied a misconduct standard of proof at the evidentiary hearing. Because we reverse and remand on the first issue, we need not reach the second.

¶ 2                                                            FACTS

¶ 3        On June 13, 2013, defendant pled guilty to the offenses of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2012)) and unlawful delivery of a controlled substance, *id.,* in exchange for consecutive sentences of five years' imprisonment and six years' imprisonment, respectively. The State also agreed to dismiss four additional charges.

¶ 4        On September 30, 2013, defendant filed a postconviction petition, arguing that he received ineffective assistance of plea counsel in that counsel failed to adequately investigate the case and gave him erroneous advice. The petition also claimed that defendant's sentences "could have been ran concurrently *** when nothing was stated in sentencing on the reason for consecutively."

¶ 5        On October 30, 2013, the State filed a motion to dismiss the postconviction petition. At a hearing the next day, the trial court appointed the public defender to represent defendant. On November 21, 2013, defendant appeared with Timothy Cappellini, the La Salle County public defender, for a "first appearance" hearing on the postconviction petition. Defendant informed the court that he and Cappellini had a disagreement. Defendant stated that Cappellini told defendant to "go *pro se* and do it [himself]" when defendant told Cappellini he needed to see transcripts of prior proceedings. Cappellini responded: "I said if he doesn't want me to represent him, he can go *pro se*. Otherwise, I will acquire the transcripts, I will review 'em and I will be the attorney." The trial court continued the matter.

¶ 6        On February 20, 2014, Douglas Kramarsic, an assistant public defender, appeared on behalf of defendant at a status hearing. Kramarsic stated that he had previously met with defendant to attempt to explain changes he wanted to make to the postconviction petition. Defendant became "very belligerent" and told Kramarsic "numerous times to go fuck [him]self." Defendant said that Kramarsic was "fired" and he wanted to hire his own attorney. Defendant grabbed the papers out of Kramarsic's hands "in a physical and aggressive manner." Kramarsic then left the room as defendant continued to yell obscenities at him.

¶ 7        Kramarsic then stated: "Your Honor, I believe at this point it's clear that [defendant] does not wish to continue with me as his attorney, and I'll leave it to the Court's discretion as to what should take place next." The trial court told defendant he could respond, and defendant stated:

          "First of all, Your Honor, he came back there and told me something totally different. It wasn't all this and that. It got out of hand—not out of hand, he tried to treat me like I'm stupid or something. *** [A]nd then I'm trying to show him something and he's

ignoring it and I'm yelling at him, I don't think he's trying to help me, he's trying to hurt me."

¶ 8        The trial court said that defendant had been appointed several public defenders and there was no one left to appoint. The trial court also told defendant that he did not have a choice as to which attorney he was assigned from the public defender's office. Defendant indicated that he wished to hire his own attorney, and the trial court granted him a 60-day continuance to do so. The trial court stated, "I can't give you another Public Defender but I can certainly let you hire somebody." The following exchange then occurred between the trial court and Kramarsic:

"MR. KRAMARSIC: Your Honor, I guess at this point it may leave me in limbo. I guess if you're still leaving me as the attorney of record, there are issues that I would want to correct with this but [defendant] certainly does not wish to hear anything that I have to say.

* * *

THE COURT: Is there anything that you want to put on the record today?

MR. KRAMARSIC: I mean, I would just like to say that I have reviewed the records, I have reviewed everything involved in this case. I haven't filed my certification regarding that, which I was going to file with my amended petition, but I can't even get to the point of being able to do that.

THE COURT: And I won't have you do that.

MR. KRAMARSIC: Okay.

THE COURT: Right now, nothing you will do, because he's requested time to—

MR. KRAMARSIC: Sure.

THE COURT:—get a private lawyer.

And so I'm reserving my ruling on you filing anything, nor are you under any obligation to do that until I see what [defendant] can find in 60 days, so let's do that for you."

¶ 9        Another status hearing was held on April 24, 2014. Kramarsic advised the court that he attempted to discuss with defendant whether defendant had been able to hire private counsel and "it [was] one hundred percent absolutely clear from our conversations that [defendant] want[ed] nothing to do with [Kramarsic] in this case." Defendant stated that he was trying to find an attorney but had not hired one yet. The trial court scheduled a hearing on the State's motion to dismiss for June 12, 2014. The trial court told Kramarsic: "I'm aware he won't talk to you. And so you won't be representing him at any hearing at this point." The trial court then stated:

"THE COURT: All right. *** And if [defendant] doesn't have a lawyer [at the hearing on the motion to dismiss], I'll have to address him as to his options.

But you put on the record he doesn't want to talk to you. That's fine. You have—

I'm not dismissing you completely, I'm leaving options open. But I won't expect you to be prepared for a hearing is what I am saying.

MR. KRAMARSIC: Okay.

THE COURT: You're still in the case."

¶ 10        At the hearing on June 12, defendant had not hired private counsel. The following exchange occurred:

"[THE COURT:] *** Now, [defendant], it's my understanding that you still want to proceed *pro se* to represent yourself?

THE DEFENDANT: I'm going to have to, Your Honor, yes, ma'am.

THE COURT: Why are you going to have to?

THE DEFENDANT: I asked [Kramarsic] three times back there are you going to help me and he gave me no answer.

THE COURT: Now, when you say, is he going to help you, what do you mean by that? I need to investigate this issue.

THE DEFENDANT: That's what I'm saying, is he going to help me try to get through this post-conviction?

THE COURT: Well, he has so far, has he not? Mr. Kramarsic?

THE DEFENDANT: He hasn't filed no motion or nothing.

THE COURT: You need to address this issue because when there's a complaint, you know, we need to have an answer here.

MR. KRAMARSIC: Your Honor,—

THE COURT: It's not just—[defendant's] complaining not just that he wants to represent himself but he says that you said you're not going to help him so why don't you respond.

MR. KRAMARSIC: You Honor, I have. This is the third time I've attempted to talk to [defendant] about this case. First time that I met with him he did not agree with the—with my ideas with the case and the way I wanted to proceed and I told him I didn't believe the issues here—that we had strong issues, and he wanted to proceed with what he thought was the right way to do it and not even listen to the way I wanted to proceed with the case. That was the first time.

The second time I met with him again I tried again to explain what I felt about the case. Again, he disagreed with me. That was the time that he lunged at me and swore at me and told me to leave, and certainly I could tell at that point that obviously he does not want me to help him at all. He just doesn't agree with my theory of the case and clearly does not want me involved with it and I feel like I'm stuck here because I don't know what else to do. [Defendant has] told me numerous times he does not want me to do anything.

THE COURT: All right, well, I find knowing [defendant], and considering the issues involved here, that it appears you do not want to listen to Mr. Kramarsic.

Now the question—I will allow—you can't choose what Public Defender you're going to have so I'll allow the Public Defender to withdraw.

Now, the question becomes, [defendant], the only right to a lawyer that you have—I feel you are capable of representing yourself if that is your desire, is whether you want to hire private counsel or you want to represent yourself *pro se*.

That's the first question I have of you. What is your answer?

THE DEFENDANT: I was trying to hire private counsel, Your Honor, you know what I'm saying, but finally no funding. ***

THE COURT: *** do you want to represent yourself?

THE DEFENDANT: No, I can't represent myself.

- 4 -

THE COURT: Well, you're going to have to.

THE DEFENDANT: All right, let's go.

THE COURT: When you say you can't—are you telling me that you're not going to be able to hire private counsel?

THE DEFENDANT: I'm waiting on my parents."

¶ 11 The court asked defendant if he was ready to proceed on the State's motion to dismiss, and defendant replied, "I guess so." The court then asked defendant to answer "yes" or "no," and defendant said, "I got no attorney. I guess not." The court granted defendant a 35-day continuance. At the hearing, defendant filed an untitled, handwritten document arguing that the State erred in charging him with an offense he committed while released on bond under the same criminal case number as the underlying offense.

¶ 12 On July 17, 2014, a hearing was held on the State's motion to dismiss. Defendant appeared *pro se*. The trial court granted the motion in part but ordered that an evidentiary hearing be held on the issue of ineffective assistance of counsel.

¶ 13 On October 2, 2014, an evidentiary hearing was held. Defendant appeared *pro se* at the evidentiary hearing. Defendant's plea counsel was the only witness. The trial court denied defendant's postconviction petition following the hearing.

¶ 14                                                    ANALYSIS

¶ 15 The Post-Conviction Hearing Act (Act) affords indigent defendants the right to counsel beyond the first stage of proceedings. 725 ILCS 5/122-4 (West 2014). The right to assistance of postconviction counsel derives from the Act rather than the constitution. *People v. Cotto*, 2016 IL 119006, ¶ 29. Our supreme court has held that "a defendant in postconviction proceedings is entitled to only a 'reasonable' level of assistance, which is less than that afforded by the federal or state constitutions." *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006) (quoting *People v. Munson*, 206 Ill. 2d 104, 137 (2002)). "[A] defendant has a right to proceed *pro se* in postconviction proceedings." *People v. Heard*, 2014 IL App (4th) 120833, ¶ 10 (citing 725 ILCS 5/122-4 (West 2010)). However, a defendant must "knowingly and intelligently relinquish[ ] his right to counsel, and his waiver [must be] clear and unequivocal, not ambiguous." *Id.*

¶ 16 Defendant argues that the trial court erred in forcing him to represent himself. Because defendant did not waive his right to appointed counsel, either expressly or through his conduct, the trial court erred in requiring defendant to proceed *pro se*.

¶ 17 A defendant can expressly waive the right to counsel. A defendant may also relinquish his right to counsel in two additional ways, forfeiture and waiver by conduct. *People v. Ames*, 2012 IL App (4th) 110513, ¶ 26. "[F]orfeiture, strictly defined, is different from waiver because instead of being an intentional relinquishment of a known right, forfeiture is the failure to make the timely assertion of the right." *Id.* ¶ 28.

"[Forfeiture of counsel] may occur because of a defendant's severe misconduct without the defendant's first having been warned of the consequences of his engaging in that severe misconduct. A trial court has the discretion to determine that the defendant's misconduct was so severe (such as physically attacking his defense counsel) that no warning of forfeiture of counsel was necessary or foreseeable before the court

concludes that the defendant has forfeited his right to counsel and will be required to henceforth represent himself." *Id.* ¶ 37.

¶ 18 The Arizona Supreme Court found that "forfeiture [of counsel] is reserved for the most severe cases of misconduct and should result only when less restrictive measures are inappropriate." *State v. Hampton*, 92 P.3d 871, 874 (Ariz. 2004) (*en banc*) (cited in *Ames*, 2012 IL App (4th) 110513, ¶ 32).

¶ 19 Waiver by conduct, on the other hand, requires that the trial court first warn a defendant that he could lose his right to appointed counsel if his misconduct continues.

" 'Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel. \*\*\*

\* \* \*

These are not "waiver" cases in the true sense of the word. In many situations[,] there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se*.' " *Ames*, 2012 IL App (4th) 110513, ¶ 34 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100-01 (3d Cir. 1995)).

¶ 20 Before a trial court may find that a defendant has waived his right to counsel by conduct, "the court must first comply with the requirements of Rule 401(a), explaining to the defendant what is at stake if his conduct continues." *Id.* ¶ 38. " ' "A court is under no less obligation to ensure that waiver is knowing and intelligent when voluntariness is deduced from conduct than when it is asserted expressly." ' " *Id.* ¶ 39 (quoting *State v. Weiss*, 637 N.E.2d 47, 50 (Ohio Ct. App. 1993), quoting *United States v. Allen*, 895 F.2d 1577, 1579 (10th Cir. 1990)). *Ames* found that the trial court committed reversible error in finding that the defendant had waived his right to counsel by his conduct because the trial court never admonished the defendant pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). *Ames*, 2012 IL App (4th) 110513, ¶ 38.

¶ 21 Here, the trial court never warned defendant that he would lose his right to appointed counsel if his misconduct toward his appointed attorney continued. See *id.* ¶¶ 34, 38. In the absence of such a warning, defendant's repeated failure to cooperate with his appointed counsel cannot be construed as a knowing waiver. See *id.* ¶ 39.

¶ 22 The State argues that this case involves postconviction proceedings, which gives the defendant a statutory right to counsel rather than a constitutional one. Also, admonitions pursuant to Rule 401 are not applicable in postconviction proceedings. See *People v. Young*, 341 Ill. App. 3d 379, 387 (2003) (holding that compliance with Rule 401 was not required during posttrial proceedings after the defendant was already convicted and sentenced). Nonetheless, we find that, under these circumstances, the trial court was required to warn defendant that his continued misconduct could result in waiver of his statutory right to counsel before defendant could waive his right to counsel by conduct. The distinction between how and where the defendant's right to counsel originated is one without significance.

¶ 23 The trial court failed to warn defendant that he could waive his right to counsel through his conduct, but indicated that defendant would still have the option of appointed counsel if he failed to hire a private attorney. Despite Kramarsic's reports about conflict between defendant

and him, the trial court maintained Kramarsic's appointment as counsel to "leav[e] options open." During this time, the trial court said that it was not dismissing Kramarsic completely, but, months later, the court allowed Kramarsic to withdraw based on his complaints that defendant would not listen to him. While it was certainly within the trial court's discretion not to permit Kramarsic to withdraw immediately, the court erred by permitting him to withdraw before warning defendant that he stood to lose his right to appointed counsel if his behavior continued.

¶ 24 Even so, the State argues that defendant forfeited his right to counsel through his severe misconduct, relying on *United States v. McLeod*, 53 F.3d 322, 324-25 (11th Cir. 1995). In *McLeod*, the court found that the defendant forfeited his right to counsel based on his "pervasive misconduct." *Id.* Defendant's attorney testified that the defendant was verbally abusive, threatened to harm him, threatened to sue him, and attempted to persuade him to engage in unethical conduct. *Id.* at 325. Because of McLeod's actions, the court found a forfeiture of defendant's right to an attorney. The court was "troubled" by the trial court's failure to warn defendant, but found that the defendant's actions were "repeatedly abusive, threatening and coercive." *Id.* at 326.

¶ 25 In this case, defendant yelled obscenities at Kramarsic and pulled the papers out of Kramarsic's hands. Though defendant's behavior was certainly inappropriate, we do not find that his misconduct was so severe that no warning was necessary or foreseeable. See *Ames*, 2012 IL App (4th) 110513, ¶ 37. While the trial court has discretion to determine whether the severity of a defendant's misconduct requires forfeiture, under these facts, a warning would have been the appropriate remedy.

¶ 26 We can only praise the trial judge for her patience and resolve during the trial of this matter, but we must reverse and remand for the above stated reasons.

¶ 27             CONCLUSION

¶ 28 The judgment of the trial court denying defendant's postconviction petition is reversed. We remand the matter for the appointment of counsel and new second stage proceedings. On remand, appointed counsel may file an amended petition, if appropriate, and the State may respond accordingly.

¶ 29 Reversed and remanded with directions.

¶ 30 JUSTICE SCHMIDT, dissenting.

¶ 31 For the following reasons, I would affirm the trial court and, therefore, respectfully dissent.

¶ 32 The record shows and the facts set out by the majority show that this trial judge was more than patient and that defendant was well aware that his refusal to work with the public defender would leave him with two choices: hire private counsel or proceed *pro se*. *Supra* ¶¶ 5-12.

¶ 33 It was obvious at a hearing on November 21, 2013, that defendant was not happy with and would not accept the help of the first public defender involved. On February 20, 2014, a second assistant public defender appeared and advised the court that defendant had been very belligerent and swore at him. The court advised defendant that there were no more public defenders and there was no one left to appoint. Defendant indicated that he wanted to hire his own attorney and the court gave him 60 days.

¶ 34    At the April 24, 2014, status hearing, the court acknowledged that it was clear that defendant wanted nothing to do with the public defender in this case. Defendant advised that he was trying to find another attorney but had not yet hired one. The trial court, again, continued the hearing on the State's motion to dismiss until June 12.

¶ 35    At the June 12 hearing, defendant had not yet hired private counsel. After discussions, the court pointed out that it was clear defendant would not listen to the public defender and allowed the public defender to withdraw. The court explained that defendant could either hire private counsel or represent himself *pro se*. Defendant said he needed more time as he did not have the funds to hire private counsel. The court continued the matter until July 17, 2014. It seems clear that from as early as February 20, 2014, the trial court was putting defendant on notice that if he could not get along with the public defender, then he would either have to hire private counsel or represent himself. If it was not clear then, it certainly should have been clear on April 24, 2014. It is hard to understand how anyone in the courtroom that day could not understand that the options were to get along and cooperate with the public defender, hire your own counsel, or proceed *pro se*. To the extent that Rule 401 admonishments are required in postconviction proceedings, there was substantial compliance.

¶ 36    For his second issue, defendant argues that the trial court denied his postconviction petition after an evidentiary hearing by applying the wrong standard. Defendant argues that the court required defendant to establish that he would have been found innocent if the cause had proceeded to trial. Defendant then argues that the correct standard is "whether but for counsel's deficiencies, the defendant would have gone to trial." That is not the standard. The standard would be whether but for counsel's deficiencies, a reasonable person in defendant's position would have gone to trial. That is, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). A bare assertion is insufficient. *Id.* at 457-60. At the evidentiary hearing on the postconviction petition, defendant's plea counsel testified. Defendant did not. Plea counsel testified that defendant knowingly decided to plead guilty after going over all the facts and the State's case. Plea counsel denied putting any pressure on defendant into taking the plea. Defendant never claimed that he was either innocent or had a plausible defense. *Id.* at 460; see also *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005). Under any standard you choose, pick one, the trial court did not err in denying defendant's postconviction petition. We review the court's judgment, not its reasoning. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983).