NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220890-U

NO. 4-22-0890

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 27, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| TERRY R. PAYTON, | ) | No. 10CF1096 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justice Doherty concurred in the judgment.
Presiding Justice DeArmond dissented.

**ORDER**

¶ 1     *Held*:   The appellate court reversed the second-stage dismissal of defendant's
postconviction petition and remanded for a third-stage evidentiary hearing.
Defendant made a substantial showing the trial court denied him his sixth
amendment right to counsel when the record did not firmly establish defendant
forfeited his right to counsel as a result of severe misconduct or waived his right
by less severe misconduct. Nor did the record firmly establish the trial court first
provided a warning and sufficient admonitions under Illinois Supreme Court Rule
401(a) (eff. July 1, 1984) when it required defendant to proceed *pro se*.

¶ 2     In November 2010, the State charged defendant, Terry R. Payton, with two counts

of armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)) and one count of burglary (720 ILCS

5/19-1(a) (West 2010)). After defendant twice encountered difficulty working with appointed

counsel, the trial court found defendant forfeited his sixth amendment right to counsel and

refused to appoint new counsel. See U.S. Const., amend. VI. Defendant then pleaded guilty to

one count of armed robbery. Defendant subsequently filed a *pro se* motion to withdraw his

guilty plea, and the court appointed counsel to represent defendant. After discussing the motion with defendant, appointed counsel moved to withdraw the motion. The court allowed the withdrawal of defendant's *pro se* motion, and defendant did not file a direct appeal.

¶ 3        In August 2015, defendant filed a *pro se* postconviction petition. In the petition, defendant argued the trial court denied him of his sixth amendment right to appointed counsel. The court summarily dismissed the petition, and defendant appealed. The Third District reversed and remanded for second-stage postconviction proceedings, finding the record did not firmly establish defendant forfeited his right to counsel as a result of severe misconduct or waived his right by less severe misconduct. *People v. Payton*, 2017 IL App (3d) 150673-U, ¶ 26. The court further found, if defendant waived his right to counsel by less severe misconduct, the record did not establish the trial court warned defendant of the consequences of his conduct or provide admonitions under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) contemporaneous with the denial of defendant's right to counsel. *Payton*, 2017 IL App (3d) 150673-U, ¶ 27.

¶ 4        On remand, the State filed a motion to dismiss. Without discussing the Third District's order, the trial court granted the State's motion, factually finding defendant waived his right to counsel by misconduct and had been admonished of his right to counsel under Rule 401(a).

¶ 5        Defendant appeals, contending the record definitively shows he did not forfeit his right to counsel by severe misconduct or waive his right to counsel by less severe misconduct. In the alternative, he argues if he waived his right to counsel by less severe misconduct, he was (1) not first properly warned of the consequences of his conduct and (2) not properly admonished under Rule 401(a).

¶ 6 We determine defendant made a substantial showing of a violation of his sixth amendment right to counsel, and information outside of the record may affect a final determination of the merits of the petition. Accordingly, we reverse and remand for third-stage postconviction proceedings.

¶ 7 I. BACKGROUND

¶ 8 On November 9, 2010, the State charged defendant with armed robbery and burglary. The trial court appointed public defender William Loeffel to represent defendant. Judge Stephen Kouri presided over the proceedings.

¶ 9 At an April 8, 2011, hearing, Loeffel informed the trial court, "to put it mildly," he and defendant had a disagreement as to how to proceed with the case, and defendant indicated he no longer wanted Loeffel's representation. Defendant had also written a letter to the court stating he wished to represent himself. Defendant told the court he wanted to represent himself, and Loeffel stated he thought defendant also wished to have standby counsel. The court admonished defendant of the charges and potential sentencing range. The court also admonished defendant of his right to counsel. The following colloquy then occurred:

"THE COURT: You also have a right to represent yourself which you're telling me you want to do. Is that what you want to do?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. I'm gonna let Mr. Loeffel be shown as withdrawn from the case and you'll represent—

Now, let me tell you something though, we're not gonna go back and forth on this. We're not gonna be on the eve of trial and you say, [y]ou know what, this is lot more complicated than I thought, I don't want—

- 3 -

THE DEFENDANT: As long as I am provided a counselor, that will be fine.

THE COURT: Well, I don't normally do that, so—

THE DEFENDANT: So—

[STATE'S ATTORNEY]: Judge, the People would object to that. I do not believe the Defendant has any right to standby counsel. I believe the law is clear, he can represent himself, he can have a counsel of his choice, or if he can't afford counsel of his choice, he can have appointed counsel, but he is not entitled to standby counsel and we would be objecting to that.

THE COURT: Let me say this, [defendant], I don't normally do that. I'm also gonna say, that if—now, I want you to think about this. I'm not gonna force an attorney on you if you don't want one and I'm not gonna force the attorney to represent you if it's not working out, but I'm not gonna let you pick which attorney from the Public Defender's office.

THE DEFENDANT: Right.

THE COURT: Let me finish and then I'm gonna let you talk.

If there comes point in time that I believe, whether it's Mr. Loeffel or anyone else is doing something wrong, is neglecting his duty in representing you, not doing what he's supposed to be doing, then I would consider giving you a different attorney in the Public Defender's office. But if don't hear that, if I'm just hearing what I hear often is, [t]he attorney's not representing me, he's not, I hear that in general terms, [w]e disagree on how to proceed, that type of thing, that comes up, that happens. You're in a difficult spot, I understand that, but

- 4 -

that—those kinds of disagreements happen in these type of situations. But if he's not doing his job, then I would consider giving you a different attorney. Irregardless of that, you have the right to represent yourself. I'm just telling you, I'm not going to go back and forth on this, meaning, we're gonna excuse Mr. Loeffel now and then somewhere down the road you tell me, [w]ell, I want a new attorney or I think need an attorney.

Are you sure you want to represent yourself?

THE DEFENDANT: Yes. I mean, so I don't get a counselor to direct me through the procedures?

THE COURT: Well, that's not my normal practice.

THE DEFENDANT: I'm asking you, is that possible for me?

THE COURT: It's highly unlikely.

THE DEFENDANT: Is that a yes or a no?

THE COURT: That's a no, you're not gonna get one.

THE DEFENDANT: So I have to do the whole procedure by myself?

THE COURT: Yes, or Mr. Loeffel."

The court inquired with Loeffel about his representation of defendant and whether Loeffel could continue to represent defendant. Loeffel told the court he had visited defendant five times. Referring to his relationship with defendant, Loeffel stated, "We have disagreements as to what's legally viable in the case. There are some things, there are some motions that [defendant] has asked me to file which I will not get into, which I absolutely refuse to file." Loeffel further told the court the two disagreed on trial strategy. However, Loeffel also stated, "I certainly, I have no animosity towards [defendant] and I believe I can certainly stay in the case and represent him."

Defendant disagreed Loeffel visited him five times and expressed frustration with how long he had been in jail. He stated he had been asking to view a video related to the case for almost four months. The colloquy then continued:

"THE COURT: Okay. Now, let's try to bring it full circle here. Do you—do you want time to think about this? Do you want to represent yourself?

THE DEFENDANT: I mean, when you—I mean, I thought when you represent yourself you are appointed a counselor.

THE COURT: No. You know, that's kind of like being little bit pregnant; you either got an attorney or you don't.

THE DEFENDANT: So in order for me to represent myself I would have to have enough time to understand due process, the court procedures, et cetera, et cetera. You know, that would take a while to learn something that people go to school for for so many years. So you put me at a disadvantage here.

THE COURT: No, I'm not putting you at any disadvantage, I'm just trying to apply the law.

THE DEFENDANT: If you appoint me a counselor, then I could work with that, but to not have counselor, it's at a very disadvantage.

THE COURT: I've appointed you an attorney.

THE DEFENDANT: He's not working.

THE COURT: Okay. Well, I've kind of laid out your choices. You know, if you think you can try to work with Mr. Loeffel—

THE DEFENDANT: That's fine, I'll do my best then. I'll represent myself.

- 6 -

THE COURT: Is that what you want to do?

THE DEFENDANT: Yes."

The court then allowed Loeffel to withdraw.

¶ 10    The case was continued multiple times between April and September 2011.  On June 11, 2011, defendant sought a continuance until September.  The trial court noted the length of the continuance "doesn't matter to me" and stated September was "roughly the normal course."

¶ 11    On July 11, 2011, defendant appeared in court, and the following colloquy occurred:

"THE DEFENDANT: Is there—is there a time period where I have to be prepared to go to trial?  I mean the reason I say that is because I have to study.  I have to study court procedures.

THE COURT: I understand.

THE DEFENDANT: I have to study when to say objection.  That's a lot I have to learn.

THE COURT: Okay.  Well, are you telling me that you're not going to be ready in September for trial?

THE DEFENDANT: I don't believe so.  I'm dealing with experts here. You know what I mean?  They went to schools to learn these procedures.  I have no idea what actually—you know what I'm saying?  It's going to take me awhile to get the fundamentals down first.

THE COURT: Let me ask you this, [defendant]—

THE DEFENDANT: Yes.

THE COURT: —have you had a little dose of reality here in the sense that you still feel like you're going to be able to proceed and feel comfortable proceeding at some point—

[THE DEFENDANT]: Oh, without a doubt. I have to.

THE COURT: —by yourself?

[THE DEFENDANT]: I have to because the—the reason I have to is because I don't believe the public defender will represent me to the best of their ability. So I believe I have no choice but to do this on my own and do it to the best of my ability. That's the way I need—

THE COURT: All right. Well—

[STATE'S ATTORNEY]: Your Honor, the defendant has been representing himself since May of this year. I see no reason why we need to be continuing a September trial date at this point. That is plenty of time to go forward.

THE COURT: Well, we're going to leave it on for now.

THE DEFENDANT: Okay, that's fine.

THE COURT: And when I say that don't read into that, well, that means the judge might continue it or he is going to continue it. You need to plan on being prepared on the trial date.

THE DEFENDANT: I am prepared everyday. It's not like I'm just sitting doing nothing. That's not the case."

¶ 12    On August 12, 2011, defendant told the trial court he was having trouble finding materials at the law library.  The court told defendant it could not teach him how to use the library resources.  The following colloquy then occurred:

"THE DEFENDANT: I'm not asking for that; I'm not—what—I'm saying is I'm just—I mean, it's like—it's like if can't find it in a certain amount of time, I'm going to be penalized for it. That's—that's—that's the argument that I'm really presenting to you, so it's like how much time do I have to properly prepare or—you know what I'm saying?

THE COURT: How much time do you want?

THE DEFENDANT: I don't—

THE COURT: I don't care if your case—you're in custody.  I don't care if your case is several months away.

THE DEFENDANT: Okay.  I just don't—

THE COURT: How much time do you want?  I don't care.  I don't mind

THE DEFENDANT: Okay.  That's fine.  I just don't want to get on the bad side of you.

THE COURT: You're not on my bad side.

THE DEFENDANT: Okay.

THE COURT: I am telling you, though, that this is what happens when people want to go *pro se*, meaning represent themselves.  All of sudden they don't realize that they've crossed the line where they want the judge to help them, and I can't help you.

THE DEFENDANT: I mean, that's fine.  I mean, I understand that.

THE COURT: That's why I take my car to a mechanic."

After the State expressed concern about delaying trial and further discussion of the amount of time defendant might need, the court continued the matter to determine the amount of resources at the law library and stated it was not necessarily going to grant further continuances. On August 18, the court and the parties discussed a discovery request, and the court scheduled a status hearing for September 1, 2011.

¶ 13 On September 1, 2011, the trial court readmonished defendant of the ramifications of his decision to proceed *pro se*. The court explained self-representation is a complex matter and defendant would be subject to technical rules he was likely unaware of that would pose a disadvantage at trial and provided examples. Defendant initially responded, "I would prefer to be represented by counsel." However, after the court explained to defendant counsel would handle all discovery matters, the appointment of counsel would delay matters, and Loeffel might again be defendant's counsel, the court asked defendant if he would like to "sleep on it overnight." Defendant replied, "Yes." The next day, defendant elected to remain *pro se*. Defendant also sought a continuance to obtain a police report and stated he did not need "the average continuance for two months." The State said it had no objection to a short continuance. In October and November, further continuances were granted with the State's agreement. Trial was ultimately set for February 2012.

¶ 14 On November 3, 2011, the case was called for a hearing on defendant's motion to quash the indictment. At the beginning of the hearing, the State noted defendant had been admonished several times about representing himself but had not been admonished of the potential for consecutive sentences. The trial court then readmonished defendant of the potential sentence for each charge as well as the potential the sentences would run consecutively.

Defendant indicated he understood the potential sentencing ranges. Defendant reasserted his desire to represent himself.

¶ 15        On November 23, 2011, defendant sought an original copy of the police report. The trial court advised defendant the report might not be admissible into evidence and, when defendant expressed an intent to use the police report, the court responded:

> "I told you you can have an attorney. You don't want one. Don't try to drag me into being your attorney. Every time you come out you try to do that. Each time progressively I'm getting more and more frustrated because we go over the same thing every time. My answer is always the same. I'm not your attorney. I have given you an opportunity to have an attorney every time you come out here. Do you want an attorney? No, I don't want an attorney. Fine. But don't then say in the next breath, Judge, I want you to be my attorney because that's essentially what you're saying."

Defendant responded, "I don't think I'm asking for that."

¶ 16        At a January 5, 2012, hearing, defendant stated he was not ready to proceed on his motion to suppress statements, and the following colloquy occurred:

> "THE COURT: Okay. Why not, just out of curiosity?
>
> THE DEFENDANT: I'm not clear—or I haven't had enough information to completely understand exactly how to prove the prosecution's—how the prosecution's misconduct affected the Grand Jury and exactly what makes the level of deprivation and what determines probable cause pertaining to the provision in the statute.

THE COURT: Okay, let me ask you a couple things.  No. 1, if we don't go forward with your motion today, is it your thinking that we will still keep the trial date where they are at, the trial dates?

THE DEFENDANT: I don't know.  I mean, I don't—but if it's—

THE COURT: I think it's coming up here in the next month or so in February.  I think February 14th.

THE DEFENDANT: Because with the information that I received from the cases, they didn't substantiate exactly what I needed to understand, so it was kind of confusing.

THE COURT: Let me ask you this, [defendant]—and I ask you this almost every hearing but not every hearing, but I'm going to ask it again this hearing—as we are proceeding further and further along in this case, I think you're seeing that these are some complex issues.  Do you want an attorney or not?

THE DEFENDANT: I mean—

THE COURT: I mean, I know you've been steadfast you want to represent yourself.  We have gone over this over and over; but at any such time as you think, you know what, I want an attorney, maybe I'm in over my head, I'll give you an attorney.

THE DEFENDANT: I mean, it's, like—I don't know if, like, the attorney I had before, Bill Loeffel, I informed him that Detective Shawn Curry never read me my *Miranda* warnings, and I can prove that, and he decided to—I asked him

to file a motion to suppress my statement, and he decided that I didn't know what I was talking about.

So it's, like, I mean, if I get a public defender, and he choose not to do things in the best of my interest and he gets the last say so, then it's, like, that's—I can't go with that because I've got no—certain things in my case that has to be presented; and if they choose to disregard that, then it's ineffectiveness on their part.

THE COURT: Well, and you're entitled to raise ineffective counsel, and you'll be able to raise it with another attorney after you—if it becomes necessary for you to appeal the case.

You're not—simply by taking an attorney now doesn't preclude you from saying, my attorney didn't do his job on appeal, and they'll be a different attorney handling the appeal. I know you don't want to get to that point, and you might not get to that point where you have to appeal; but I'm just saying that simply by accepting an attorney, a public defender, and letting him do his job and so forth, that doesn't preclude you from, if necessary, raising the issue of ineffective counsel.

You're not waiving it, but I'm not talking you into having an attorney or not having an attorney. I just—every time you come out here, I can see you're struggling, which is understandable, because you don't have three years of law school and several years of experience.

But if you want to represent yourself—we have gone over this—you can. If you want an attorney, I'll give you an attorney. I'm not, though—there are

limits. I'm not going to tell the attorney how to do his job because I'm the Judge. I'm not the attorney. I'm not going to be your attorney, either, if you represent yourself, and I'm not going to let you dictate which attorney the public defender assigns to your case because—

THE DEFENDANT: Okay. So if I'm appointed an attorney and we have a conflict of interest, how do I deal with that situation?

\*\*\*

THE COURT: I deal with it probably on a weekly basis. Usually, it's a dispute over, this motion should be filed or shouldn't be filed or whatever, or he's not seeing me enough, not talking to me enough; and almost every time after I hear it out, which I don't like hearing it out, but I deal with it and we hear it out, almost every time it does not result in a new attorney being appointed. I'm not saying it's never happened before, but that's how it usually ends up.

I can also tell you that there are numerous appeals where ineffective counsel is raised. I don't know what else to tell you. But if, you know, you want to represent yourself, we will continue to try to wade through this, whether it's today or down the road, but it doesn't get any easier once there's a trial, and I cannot sit up here and tell you what to do or not to do. I can't be your attorney.

THE DEFENDANT: Okay. I would ask to be appointed counsel.

\* \* \*

THE COURT: Now, when that public defender gets involved, it may or may not be Mr. Loeffel, and he may say, well, I'm not going to pursue this motion on dismissing the indictment.

- 14 -

THE DEFENDANT: The motion is—

THE COURT: Yeah, I don't know, and then you may have to raise that issue down the road.

[STATE'S ATTORNEY]: Your Honor, before we go any further, I think he is making it clear, and I know it's on the record, but his reactions to any time the Court mentions that the attorney may not file a motion, [defendant] is making it clear that if he doesn't—if his attorney doesn't file whatever he wants him to file whenever he wants them to file it, then he is going to not agree to work with them, and we are going to be right back in the situation again where he is going to want to fire his attorney and do it himself saying they don't know what they are doing, they don't know how to handle my case, I'm the only one that can do it.

So I think he needs to be again strongly admonished, and it needs to be made clear to him what the role of an attorney is and how that relationship is going to operate and that we can't just keep flip flopping back and forth.

THE COURT: I know, and everybody's getting a little frustrated with this whole thing, and [defendant's] frustrated.  He is the one with the most at stake here.  I shouldn't say that because there are victims involved that have a lot at stake, too, alleged victims; but [defendant] has a lot at stake, and the only thing we are doing today is appointing [defendant] an attorney, and we are not changing any dates yet or anything like that.  So if there becomes another flare-up, which hopefully there won't be, but there might be, then we will have to deal with it if and when that happens."

¶ 17        Later in the hearing, the trial court again told defendant any motions would be "filtered through your attorney" and explained how defendant could raise concerns about counsel on appeal.  The court then stated:

> "Now, after I've lectured you on all that, do you still want an attorney or not?  Otherwise, we are going to hear your motion today because, you know what, this is getting ridiculous.  I'm tired of giving this lecture every time you come out here, and we get no[ ]place with your motion."

Defendant responded he wished to be appointed counsel.  The court appointed public defender Kevin Lowe to represent defendant.

¶ 18        In an *ex parte* letter to the trial court, dated February 16, 2012, defendant complained about Lowe's representation.  A copy of the letter appears in the record, but it is difficult to read.  Defendant alleged the letter represented his second request to have Lowe removed as his appointed counsel.  Defendant further alleged Lowe did not have time to meet with defendant because of Lowe's caseload.  Defendant stated Lowe had a preexisting bias against him and characterized Lowe's representation as farcical.

¶ 19        On March 26, 2012, Lowe told the trial court defendant was dissatisfied with his representation.  Lowe stated defendant had filed a complaint in the form of a letter with the Attorney Registration and Disciplinary Commission (ARDC). The ARDC concluded defendant's complaints did not warrant an investigation.  Lowe also received a letter from defendant in which defendant expressed his dissatisfaction with Lowe's representation.  Lowe said the letter "addresses me in some rather unkind terms shall we say," and added, "[s]o, I don't certainly take kindly to that."  Later, Lowe stated the letter also used unkind terms to describe

both himself and other attorneys. Lowe did not provide further specifics of the letter based on concerns of attorney-client privilege.

¶ 20     Defendant said that he was dissatisfied with Lowe's representation because Lowe had not examined the record or consulted with him about his concerns. Defendant further stated, "I don't know exactly what to do at this point because I don't understand why I'm receiving this type of representation, and is it possible that I can receive decent representation?"

¶ 21     Lowe explained he initially was unable to spend a large amount of time on defendant's case because he had three pending jury trials. Lowe also admitted he had not been able to visit defendant and, by the time his second jury trial concluded, defendant had already filed the complaint with the ARDC. Lowe stated the letter defendant sent to him personally upset him but also stated he understood "people are frustrated" and he could "get beyond this personal letter to me." The following colloquy then occurred:

"THE DEFENDANT: This is, I mean, I don't know what's going to become of this.

THE COURT: I know what's going to become of this.

THE DEFENDANT: I'm sure you do, but I don't.

THE COURT: I do.

THE DEFENDANT: The reason I say that is if I can get Mr. Lowe to represent me, you know what I'm sayin', without the low caliber of representation that I see now, I wouldn't have problem, you know what I'm sayin', allow him to represent me.

THE COURT: You know what, you're just going to represent yourself. We've gone down this road. You've exhausted my patience. You have

exhausted my patience. I don't think you ever want to go to trial. I think you want to stay right where you're at.

THE DEFENDANT: What I want to do, your Honor, I want to present my motion. And the way I need to present my motion, if I have to do it, then I have to subpoena Mr. Steven Pattelli.

THE COURT: Well, Mr. Lowe and Mr. Loeffel and anybody else in the Public Defender's office doesn't get paid enough to [be] told what a lousy job they're doing for you.

THE DEFENDANT: Even if [they're] doing a lousy job?

THE COURT: Well, you know what, after two, I'm starting to think maybe it's [defendant] and not Mr. Lowe or Mr. Loeffel because I see them all the time. I'm not supposed to consider this. I see how they do their job all the time in here. I'm not supposed to consider that, but I don't see the low caliber—that doesn't mean that they might have a bad day or might have a bad case. But I'm starting to think that it's [defendant] that has the bad case. That's what I'm starting to think.

So, you know what, you're not, if you want to get somebody from your own corporate legal department to represent you, you can. If you want to have your buddy out at the jail tell you what to do, you can, but we're not doing this anymore. We're not doin' it anymore. You're representing yourself. Got it?

THE DEFENDANT: That's fine.

THE COURT: Okay. Because they don't have to put up with what you're dishin'.

THE DEFENDANT: You've made your point clear.

THE COURT: Good.

THE DEFENDANT: Now, I need some papers to subpoena Steven Pattelli.

THE COURT: We've done all that, and I'm not giving you any more papers to subpoena. I'm not giving you standby counsel. You're set for trial—I think a week from today you're set for trial. I think it's a week from today. Good luck."

¶ 22    At an April 2, 2012, hearing, defendant said he was not ready for trial because he needed representation. Defendant further stated he was not hiring private counsel. The trial court responded:

"THE COURT: Okay. Let me make something clear about the ruling that I made. I want the record to be clear. I think you've forfeited your right to have an attorney represent you by the way you were treating your attorney, okay? So that's why I didn't go through a bunch of admonitions with you, which I've gone through those admonitions with you in the past, because we keep going back and forth, back and forth, back and forth, and we're not going to do it anymore. And when you filed your [ARDC] complaint against I think it was Mr. Loeffel this time—I can't remember.

[STATE'S ATTORNEY]: Mr. Lowe.

THE COURT: Mr. Lowe, I think you've forfeited your right to be represented by a public defender. Now, if you want to—if you want to

- 19 -

represent—if you want to hire your own attorney, go right ahead, but I'm not appointing any more. I'm just not.

THE DEFENDANT: I mean, if you force me to go *pro se*, then that's—

THE COURT: I'm not forcing you. You made that choice, but go ahead.

THE DEFENDANT: I was—I was—the last time I was here, I told you that Kevin Lowe was being ineffective, and he [told] me—he told you himself that the situation by my writing the [ARDC] put him in an awkward situation, and that was either he's going to be hostile toward me or he's going to be vindictive towards me.

[STATE'S ATTORNEY]: Your Honor—

THE DEFENDANT: And therefore—

[STATE'S ATTORNEY]: I'm going to object to him saying that. It's not—

THE DEFENDANT: And therefore—and therefore, he's unreliable. Now, to give me partial representation—you know what I'm saying—is a violation of my constitutional rights. So therefore, I'm asking you that—I'm telling you that I'm not qualified to represent myself, and I need representation.

THE COURT: Okay. Well, there's been a long history about this. We're not going to regurgitate it every time you come out. And it didn't start with the last hearing. It started with other attorneys, and you wanted to represent yourself *pro se*. You're going to keep going through the list until you find somebody that will agree with you, and I don't know that you're going to find somebody that agrees with you. But I can tell you right now, I'm not appointing anybody else.

So when are we going to—when are we going to try this case?

THE DEFENDANT: I mean, that's for you to decide, Your Honor.

THE COURT: Well, I know. I just did.

THE DEFENDANT: Okay. Well, I mean, you asking me—

THE COURT: I mean, I decided it a long time ago, but I've just repeated it.

THE DEFENDANT: You asking me when—you asking me when do I want to go to trial.

THE COURT: Oh, I see.

THE DEFENDANT: And I'm telling you that I'm not capable of representing myself. So it's your call."

The court set the case for trial, and defendant said he intended to file a motion to change "venue" because he felt that the court was prejudiced against him. Defendant's motion for substitution of judge was heard by another judge and denied.

¶ 23      On May 4, 2012, defendant noted he did not have time to present motions and stated, "I mean, I've been trying to get some representation here also, and you denied it." Defendant also asked, "Would you consider representation?" and the trial court responded, "We're not going to go down that road again at this point."

¶ 24      On July 2, 2012, the case was called to set a trial date. Defendant again stated he needed appointed counsel. The trial court responded it had already been through that issue, noting it thought defendant had been through "four, five, six public defenders." Defendant responded that he had two prior public defenders, and the court stated, "Two. That's it?" The court explained it needed to review the transcripts "as to the situation with the last public

defender" and indicated it would consider appointing counsel for defendant. The court continued the case.

¶ 25     On July 13, 2012, the trial court stated it had reviewed the transcripts and it decided not to appoint standby counsel for defendant, as it had previously told defendant he would not get standby counsel. The following colloquy then occurred:

"THE DEFENDANT: I'm not requesting stand-by counsel. I am requesting counsel period.

THE COURT: Oh, I see.

THE DEFENDANT: I'm not—I'm not qualified to represent myself.

THE COURT: Well, we probably agree on that, but—

THE DEFENDANT: Yes

THE COURT: But you—you're not getting another attorney. You've run through them.

THE DEFENDANT: So what—how can you deny me my constitutional right?

THE COURT: You know what—

THE DEFENDANT: You're denying me my Sixth Amendment for something that I didn't—

THE COURT: You keep flipping back and forth. You know what I think, [defendant]? I think you just want to keep—

THE DEFENDANT: No, I want an opportunity—no, no. I want an opportunity to read—to receive a reasonable service of representation. That's it.

THE COURT: So what are you suggesting?

- 22 -

THE DEFENDANT: I'm suggesting that you appoint me a counselor.

THE COURT: Do you want Mr. Lowe?

THE DEFENDANT: Do I have choice?

THE COURT: No.

THE DEFENDANT: Appoint me counselor.

THE COURT: I'm not appointing you counsel. I've decided—

THE DEFENDANT: You just asked me do I want Mr. Lowe.

THE COURT: Pardon me?

THE DEFENDANT: You just asked me do I want Mr. Lowe.

THE COURT: I did.

THE DEFENDANT: Okay. Well, appoint me Mr. Lowe.

THE COURT: I've decided that I'm not appointing you counsel. You are going it alone. You are going it alone."

¶ 26 On July 30, 2012, the case was called for a trial scheduling conference. The State expressed concern about defendant's waiver of counsel and told the trial court it wanted the record to be clear whether defendant still wished to proceed *pro se*, and if not, whether the court was willing to appoint counsel, and if not, on what grounds. Defendant stated again he wanted to be appointed a public defender. The court advised defendant it was not appointing counsel because defendant had "made a mockery out of this whole process." The court further stated it thought defendant was intentionally trying to delay the proceedings. Near the end of the hearing, the following exchange occurred.

"THE DEFENDANT: And I have been denied counsel?

THE COURT: Yes, you have been. You have been denied as clear as can be as I'm saying it. You're going it alone.

THE DEFENDANT: Okay. So, like—so when it's time to pick the jury—

THE COURT: I'm actually going to consider standby counsel.

THE DEFENDANT: Only then?

THE COURT: For jury selection."

¶ 27 On August 15, 2012, defendant entered a fully negotiated guilty plea to one count of armed robbery. In exchange for his plea, the trial court accepted the State's recommendation to dismiss the remaining two charges and impose a sentence of 32 years' incarceration.

¶ 28 On August 27, 2012, defendant filed a *pro se* motion to withdraw his guilty plea, and the trial court appointed counsel to represent defendant. After discussing the motion with defendant, appointed counsel moved to withdraw the motion. The court granted the motion to withdraw defendant's motion to withdraw the guilty plea. Defendant did not file a direct appeal.

¶ 29 On August 3, 2015, defendant filed a *pro se* postconviction petition. In the petition, defendant argued the trial court denied him his sixth amendment right to appointed counsel. The court summarily dismissed the petition.

¶ 30 Defendant appealed. In September 2017, the Third District reversed and remanded for second-stage postconviction proceedings. Relying in part on this court's opinion in *People v. Ames*, 2012 IL App (4th) 110513, ¶ 34, 978 N.E.2d 1119, the appellate court noted two ways a defendant's conduct may affect his right to counsel: (1) forfeiture of the right to counsel resulting from the defendant's severe misconduct (such as physically attacking defense counsel), which requires no prior warning and (2) waiver of the right to counsel resulting from less severe forms of misconduct. In the second instance, after a trial court's warning, a

defendant's engagement in dilatory tactics may be treated as an implied request to proceed *pro se* and, thus, as a waiver of counsel. *Payton*, 2017 IL App (3d) 150573-U, ¶¶ 22-23. The court found the record did not firmly establish defendant forfeited his right to counsel as a result of severe misconduct or waived his right by less severe misconduct. *People v. Payton*, 2017 IL App (3d) 150673-U, ¶ 26. The court further found, if defendant waived his right to counsel by less severe misconduct, the record did not establish the trial court provided the necessary warnings or admonitions before it denied defendant's right to counsel. Accordingly, defendant stated the gist of a constitutional claim, making summary dismissal improper. *Payton*, 2017 IL App (3d) 150673-U, ¶ 27.

¶ 31 On remand, the case was assigned to Judge Paul Gilfillan. On November 8, 2017, in a written order, Gilfillan noted the remand and issues and set the matter for second-stage review. However, the second-stage hearing was presided over by Judge Katherine Gorman.

¶ 32 The trial court appointed counsel. The record shows there were multiple continuances, including changes of counsel, along with an intervening "General Order in Peoria County Post-Conviction Cases or Other Post Conviction-Type Cases" that delayed review of certain postconviction actions. On August 23, 2021, counsel filed a supplemental petition incorporating defendant's arguments in his *pro se* petition and alleging the court denied defendant's right to counsel and failed to properly admonish him concerning waiver of counsel by misconduct.

¶ 33 On July 6, 2022, the State moved to dismiss. In its motion, the State did not mention the Third District's disposition and remand and instead stated, "After a first stage review by [Judge Gilfillan], the matter was docketed for [stage-two] proceedings and defendant was appointed defense counsel." The State further stated the docketing order filed by the trial

court "indicated there were [two] issues that needed to be considered upon second stage review:" (1) whether defendant waived his right to counsel due to misconduct and (2) if defendant did waive his right to counsel, whether the court improperly failed to admonish defendant a second time when it denied defendant his right to counsel. The State then recited the basic facts without citing any legal principles. The State also did not argue defendant forfeited the issues by failing to raise them on direct appeal. Defendant argued he did not waive his right to counsel by misconduct, was not properly warned of the consequences of his conduct, and was not given proper Rule 401(a) admonitions when the court denied him counsel. He requested a third-stage evidentiary hearing.

¶ 34 At the August 19, 2022, hearing on the matter, the trial court stated, "All right. So am I correct that on August 3rd of 2015, [defendant] filed a *pro se* post conviction petition that was adopted on August 23rd of 2021, and then a motion to dismiss was filed?" Defense counsel replied "yes" and indicated the court was not missing any pleadings. The State conceded twice it did not think defendant forfeited his right to counsel by severe misconduct. However, the State argued defendant waived his right to counsel by misconduct. The State then argued defendant was previously admonished at least twice of his right to counsel, and the record showed he understood that right. Defense counsel argued defendant's conduct did not amount to a waiver of his right to counsel. Citing *People v. Lesley*, 2018 IL 122100, 123 N.E.2d 1060, defense counsel also argued, even if defendant's conduct could amount to waiver of his right to counsel by misconduct, the court failed to properly warn him before denying him counsel.

¶ 35 On September 20, 2022, the trial court found defendant waived his right to counsel "due to his efforts to circumvent and delay the process" and found the court covered the ramifications of that decision. The court did not discuss the order of the Third District or the

- 26 -

cases the appellate court relied on when remanding the case for second-stage proceedings. Instead, it cited two cases involving the appointment of standby counsel for the proposition "though an indigent defendant is entitled to have counsel appointed for him, the right to counsel of your choosing may not be employed as a weapon to thwart indefinitely the administration of justice or otherwise embarrass the prosecution of the crime." See *People v. Myles*, 86 Ill. 2d 260, 427 N.E.2d 59 (1981); *People v. Timmons*, 233 Ill. App. 3d 591, 599 N.E.2d 162 (1992).

¶ 36          This appeal followed.

¶ 37                                    II. ANALYSIS

¶ 38          On appeal, defendant contends the record definitively shows he did not forfeit his right to counsel by severe misconduct or waive his right to counsel by less severe misconduct. In the alternative, he argues, if he waived his right to counsel by less severe misconduct, he was (1) not first properly warned of the consequences of his conduct and (2) not properly admonished under Rule 401(a). He asks us to reverse the dismissal of his postconviction petition and either (1) find that an evidentiary hearing is unnecessary and remand for a new trial or, in the alternative, (2) remand for a third-stage evidentiary hearing.

¶ 39          Under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), a convicted defendant may challenge his or her conviction on the basis he or she suffered the deprivation of state or federal constitutional rights. *People v. Domagala*, 2013 IL 113688, ¶ 32, 987 N.E.2d 767. The Act sets forth a three-stage process: at the first stage, a defendant need only present the gist of a constitutional claim. At the second stage, a defendant's petition and its accompanying documentation must make a substantial showing of a constitutional deprivation. At the third stage, an evidentiary hearing on the claim is held. *Domagala*, 2013 IL 113688, ¶¶ 32-34.

¶ 40        When a petition is advanced to the second stage, the court may appoint counsel

for an indigent defendant, and counsel may amend the postconviction petition as necessary.

*People v. Cotto*, 2016 IL 119006, ¶ 27, 51 N.E.3d 802.

¶ 41        The State may answer the petition, in which case the proceedings are advanced to

the third stage, or it may move to dismiss the petition.  *People v. Andrews*, 403 Ill. App. 3d 654,

658, 936 N.E.2d 648, 653 (2010).  If the State moves to dismiss the petition at the second stage,

such a dismissal is warranted only when the allegations in the petition fail to make a substantial

showing of a constitutional violation.  *People v. Hall*, 217 Ill. 2d 324, 334, 841 N.E.2d 913, 920

(2005).  We review *de novo* the trial court's dismissal of a postconviction petition at the second

stage.  *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006).

¶ 42                    A. Forfeiture of Defendant's Postconviction Claims

¶ 43        Before addressing defendant's claims, we note the State argues defendant

forfeited his claims because he failed to raise them in a direct appeal.  The State acknowledges it

did not previously raise the issue of forfeiture in the trial court or in the first appeal.  However,

the State argues it may now raise the issue for the first time and further contends the factual basis

for defendant's contentions is based on the existing record, such that the matter could have been

determined on direct appeal.  We disagree.

¶ 44        The doctrines of forfeiture and *res judicata* typically bar arguments which were

raised or could have been raised on direct appeal from being raised in a postconviction petition.

*People v. Blair*, 215 Ill. 2d 427, 442-45, 831 N.E.2d 604, 614-616 (2005).  Further, a

postconviction petition is subject to dismissal on grounds of *res judicata* or forfeiture at both the

first and second stages.  *Blair*, 215 Ill. 2d at 450-51, 831 N.E.2d at 618-19 (2005); see *People v.*

*Smith*, 2013 IL App (4th) 110220, ¶ 27, 986 N.E.2d 1274 (stating the trial court has the authority

to summarily dismiss a petition based on a finding the defendant could have but did not raise the claims in an earlier proceeding). However, the failure to file a direct appeal does not forfeit constitutional claims in a postconviction hearing. *People v. Grammer*, 24 Ill. App. 3d 648, 651, 321 N.E.2d 735, 737 (1974); *People v. Rose*, 43 Ill. 2d 273, 279, 253 N.E.2d 456, 461 (1969) ("[A] party who fails to take an appeal, whether by careful choice, inadvertence, indigence, or as a result of fleeing the jurisdiction as here, may waive claims of error, but any right which may have existed to a post-conviction hearing on the constitutionality of imprisonment will remain undiminished."). Because no direct appeal was taken in this case, we may consider defendant's constitutional claims.

¶ 45            Moreover, it has long been held *res judicata* and forfeiture do not apply where fundamental fairness so requires or where facts relating to the claim do not appear on the face of the original appellate record. *Blair*, 215 Ill. 2d at 450-51, 831 N.E.2d at 619. "The right to counsel is fundamental and will not be lightly deemed waived." *People v. Stoops*, 313 Ill. App. 3d 269, 273, 728 N.E.2d 1241, 1244 (2000); see generally *People v. Vernón*, 396 Ill. App. 3d 145, 149, 919 N.E. 2d 966, 972 (2009) (expressing doubt the court could apply the forfeiture doctrine to a failure to admonish of the right to counsel). In addition, despite the parties' insistence that determination of this appeal can be accomplished from the face of the record, as we discuss in the following section of this disposition, we disagree. Thus, the issue also is not one that was amenable to determination on direct appeal, leaving postconviction proceedings a particularly proper course of action. Accordingly, we address defendant's claims.

¶ 46            B. Forfeiture and Waiver of the Right to Counsel by Misconduct

¶ 47            Defendant contends the record definitively shows he did not forfeit his right to counsel by severe misconduct or waive his right to counsel by less severe misconduct. In the

alternative, he argues, if he waived his right to counsel by less severe conduct, he was (1) not first properly warned of the consequences of his conduct and (2) not properly admonished under Rule 401(a).

¶ 48　　　　At the outset, we note defendant argues the parties agree that he did not forfeit his right to counsel because of severe misconduct.  Meanwhile, the State conceded the issue in the trial court, and it does not clearly contest the issue in its appellate brief.  However, our review of the matter is *de novo*, and "[i]rrespective of the parties' arguments, the record is what it is." *People v. Carter*, 2015 IL 117709, ¶ 22, 43 N.E.3d 972.  Thus, "[a]s far as any arguable concession is concerned, it is well established that we, as a court of review, are not bound by a party's concession." *Carter*, 2015 IL 117709, ¶ 22.  To the extent the State could be deemed to have conceded the issue in the trial court or on appeal, we are not bound by such a concession and will decline to accept a concession that the record fails to support.  See *People v. Rolfe*, 2016 IL App (4th) 130832, ¶ 13, 51 N.E.3d 1130.

¶ 49　　　　We also note the trial court proceedings originally took place under the jurisdiction of the Third District.  After the Third District decided the first appeal, Peoria County was redistricted from the Third District to the Fourth District.  Pursuant to the order of our supreme court:

> "If a case is heard by one appellate district on appeal and if a subsequent appeal in that case is heard by a new appellate district pursuant to this order, the new district shall treat the decision of the prior district as the law of the case.  The fact that the decision of the prior district applied the law of the prior district that is contrary to the law of the new district shall not be a basis for departing from the decision of the prior district." Ill. S. Ct., M.R. 30858 (eff. Dec. 8, 2021).

Accordingly, the propositions of law set forth below are generally derived from the Third District's disposition remanding defendant's case for second-stage proceedings, which we observe relied heavily on this court's disposition in *Ames*.

¶ 50    The sixth amendment entitles a criminal defendant to counsel at all critical stages of the prosecution. *Vernón*, 396 Ill. App. 3d at 153, 919 N.E.2d at 975. This right extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). However, a defendant can expressly waive his right to counsel and proceed *pro se* during the proceedings. *People v. Lesley*, 2017 IL App (3d) 140793, ¶ 17, 76 N.E.3d 42, overruled on other grounds, *Lesley*, 2018 IL 122100. A defendant may also relinquish his right by (1) forfeiture or (2) waiver by misconduct. *Ames*, 2012 IL App (4th) 110513, ¶ 26.

¶ 51    Forfeiture of a defendant's right to counsel results from a defendant's severe misconduct and requires no prior warning. *Ames*, 2012 IL App (4th) 110513, ¶ 37. A trial court has the discretion to determine the defendant's misconduct was so severe that no warning of forfeiture of counsel is necessary or foreseeable before the court concludes the defendant has forfeited his right to counsel. *Ames*, 2012 IL App (4th) 110513, ¶ 37. " '[F]orfeiture [of counsel] is reserved for the most severe cases of misconduct and should result only when less restrictive measures are inappropriate.' " *Lesley*, 2017 IL App (3d) 140793, ¶ 18 (quoting *Arizona v. Hampton*, 92 P.3d 871, 874 (2004) (*en banc*)).

¶ 52    A defendant waives his right to counsel as a result of less severe forms of misconduct that persist after a trial court's warning to defendant that continued misconduct will result in the loss of the right to appointed counsel. *Lesley*, 2017 IL App (3d) 140793, ¶ 19. After a trial court's warning, a defendant's engagement in dilatory tactics " 'may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.' " *Ames*, 2012 IL

App (4th) 110513, ¶ 34 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir. 1995)). In addition, before a defendant's misconduct can result in waiver of counsel, a trial court must comply with the admonishment requirements of Rule 401(a).

¶ 53 In defendant's first appeal, the Third District, noting the limitations put upon it on an appeal from a first-stage summary dismissal of a postconviction petition, indicated it was not concerned with whether the facts affirmatively established defendant's conduct resulted in forfeiture or waiver of counsel. Instead, the relevant question was whether defendant stated the gist of a constitutional claim—that is, whether he sufficiently showed his conduct did not rise to the level of misconduct required to find either forfeiture or waiver. The court found it "highly questionable whether defendant's letter to Lowe, and defendant's use of alternating requests to proceed *pro se*, constitute misconduct of such a severe nature so as to justify his forfeiture of appointed counsel." *Payton,* 2017 IL App (3d), 150673-U, ¶ 26. Likewise, the court found "there is a question of fact as to whether defendant's letter to Lowe, and defendant's use of alternating requests to proceed *pro se*, establish misconduct in the sense that defendant was attempting to intentionally delay the proceedings." *Payton*, 2017 IL App (3d), 150673-U, ¶ 26. Accordingly, defendant alleged the gist of a claim that he did not forfeit or waive his right to counsel due to misconduct, and the court remanded for second-stage proceedings. *Payton*, 2017 IL App (3d), 150673-U, ¶ 26.

¶ 54 Likewise, we too, at the second stage, are not concerned whether the facts affirmatively establish defendant's conduct resulted in forfeiture or waiver of counsel. At the second stage of postconviction proceedings, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act. *People v. Coleman*, 183 Ill. 2d 366, 380, 701 N.E.2d 1063, 1071

(1998). At this stage, "the defendant bears the burden of making a substantial showing of a constitutional violation," and "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008. Our supreme court has emphasized when a petitioner's claims are based on matters outside the record, the Act does not intend such claims be adjudicated on the pleadings. *People v. Simms*, 192 Ill. 2d 348, 360, 736 N.E.2d 1092, 1105 (2000). Thus, at a dismissal hearing, the court is prohibited from engaging in any fact finding. *Coleman*, 183 Ill. 2d at 380-81, 701 N.E.2d at 1071. The dismissal of a postconviction petition at the second stage is warranted only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *Coleman*, 183 Ill. 2d at 382, 701 N.E.2d at 1072.

¶ 55 Here, despite the parties' assertions to the contrary, a determination of issues of forfeiture or waiver of counsel by misconduct involves factual questions partially based on matters outside the record. As to forfeiture, while we agree with the Third District it is "highly questionable whether defendant's letter to Lowe, and defendant's use of alternating requests to proceed *pro se*, constitute misconduct of such a severe nature so as to justify his forfeiture of appointed counsel," a full determination of the matter necessitates further details about defendant's letters to Lowe and his complaint to the ARDC, along with greater details about his behavior toward both Loeffler and Lowe.

¶ 56 The trial court has the discretion to find forfeiture of the right to counsel in certain contexts involving extremely serious misconduct. While the Third District noted the lack of a physical confrontation, extremely serious misconduct is not limited to a physical battery. See *United States v Leggett*, 162 F.3d 237, 250 (3rd Cir. 1998). It may also include a context in which a defendant is "abusive toward his attorney," and can include situations in which the

- 33 -

defendant was verbally abusive, threatened to harm counsel, threatened to sue counsel, or tried to persuade counsel to engage in unethical conduct. *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995). It also may include yelling at counsel, combined with refusal to cooperate with counsel, and attempts to force counsel to file frivolous claims, especially if the defendant engaged in such conduct in relationships with multiple attorneys. See *United States v. Thomas*, 357 F.3d 357, 363 (3rd Cir. 2004), see also *Kostyshyn v. Delaware*, 51 A.3d 416, 419-20 (2012) (stating defendant's yelling, coupled with derogatory and insulting statements and threats to sue counsel, was sufficiently egregious activity so as to forfeit the right to counsel). We are not aware of a case in which the filing of an unwarranted disciplinary complaint alone constituted sufficiently severe conduct to allow a finding of forfeiture by misconduct. However, we note the North Carolina Court of Appeals has found forfeiture when a defendant was "deliberately difficult," continually argumentative, and uncooperative with counsel, and where defendant had filed a complaint against his counsel with the State bar. *North Carolina v. Forte*, 817 S.E.2d 764, 775-76 (2018). Further, the Third District, without discussing the difference between forfeiture of counsel and waiver of counsel, has held a defendant "waived" the right to counsel by refusing to cooperate with counsel, delaying proceedings, and filing a federal lawsuit and a disciplinary complaint against counsel with the ARDC. *People v. Kennedy*, 204 Ill. App. 3d 681, 683-84, 561 N.E.2d 1347, 1349-50 (1990).

¶ 57        Here, evidence showed defendant was difficult to work with and that he presented challenges to more than one attorney. Loeffel informed the trial court, "to put it mildly," he and defendant had a disagreement as to how to proceed with the case, and defendant indicated he no longer wanted Loeffel's representation. Defendant further sent a letter to Lowe, which Lowe stated, "addresses me in some rather unkind terms shall we say." Later Lowe stated the letter

also used "unkind terms" to describe himself and other attorneys. However, complete details of defendant's conduct toward his attorneys are outside of the record. In particular, specific details of defendant's letter to Lowe are outside of the record; thus, it is unknown whether the "unkind terms" included threats, abusive language, or material that would rise to the level of extremely serious misconduct. Lowe stated defendant also filed a complaint with the ARDC, which concluded defendant's complaints did not warrant an investigation. But that complaint is also not in the record, and it is unknown if the allegations included were abusive or entirely frivolous. There are also indications defendant asked both of his attorneys to file frivolous motions and that he was repeatedly uncooperative.

¶ 58         This is not to say that defendant's actions were such as to warrant the trial court's finding of forfeiture of his right to counsel by severe misconduct. However, the final determination of that issue requires fact finding that is not appropriate at the second stage of postconviction proceedings.

¶ 59         Likewise, whether defendant waived counsel by less serious misconduct also requires fact finding at third-stage proceedings. While the trial court found defendant's actions dilatory, and defendant's letter to Lowe and filing of a complaint against Lowe with the ARDC certainly suggest waiver by misconduct, as previously noted, the record is missing details about the letters to Lowe and the ARDC complaint. As to whether defendant's actions were dilatory, we note the record shows multiple occasions in which defendant stated arguably valid reasons for seeking continuances, and in many instances those continuances were agreed to by the State. Further, the court expressed indifference about the delays on multiple occasions. At third-stage proceedings, defendant would have the opportunity to present evidence to show his actions were not intended to unnecessarily delay the proceedings.

¶ 60   Because we remand for third-stage proceedings, we need not address defendant's

remaining arguments that the trial court erred in determining he was sufficiently warned and

provided Rule 401(a) admonitions before the court denied him counsel. However, as discussed

further below, we note the court did not fully apply the appropriate law when it determined the

issues. Accordingly, because the matter could arise again on remand, we address the appropriate

law to be applied.

¶ 61           C. Failure to Warn

¶ 62   Defendant argues the trial court failed to warn him of the consequences of his

conduct before depriving him of counsel. As previously indicated, forfeiture of the right to

counsel based on serious misconduct requires no warnings. However, this court, the Third

District, and our supreme court have all held, before a trial court may deny a defendant the right

to counsel based on waiver by misconduct, it must first warn the defendant of such a possibility.

¶ 63   In *Ames*, this court adopted the reasoning of the Third Circuit Court of Appeals in

*Goldberg*, holding, " '*Once a defendant has been warned* that he will lose his attorney if he

engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to

proceed *pro se* and, thus, as a waiver of the right to counsel.' " (Emphasis added.) *Ames*, 2012

IL App 4th 110513, ¶ 34 (quoting *Goldberg*, 67 F. 3d at 1100). As the *Ames* court explained:

> " 'These are not "waiver" cases in the true sense of the word. In many
>
> situations[,] there will be defendants who engage in dilatory conduct but who
>
> vehemently object to being forced to proceed *pro se*. These defendants cannot
>
> truly be said to be "waiving" their Sixth Amendment rights because although they
>
> are voluntarily engaging in misconduct knowing what they stand to lose, they are
>
> not affirmatively requesting to proceed *pro se*. See *United States v. Fazzini*, 871

- 36 -

F.2d 635 (7th Cir. [1989]) (defendant who was warned about consequences of dilatory conduct insisted he was not waiving his right to counsel), *cert. denied*, 493 U.S. 982, 110 S. Ct. 517, 107 L. Ed.2d 518 (1989).' " *Ames*, 2012 IL App 4th 110513, ¶ 34 (quoting *Goldberg*, 67 F. 3d at 1101).

¶ 64 This court further held in *Ames* the same colloquy required for affirmative waivers must also be given before a defendant can be said to have waived his right to counsel by conduct. *Ames*, 2012 IL App 4th 110513, ¶ 35. Thus, combining the two propositions, this court stated, "For a trial court to conclude that waiver of counsel by conduct has occurred in the case before it, the court must first comply with the requirements of Rule 401(a), explaining to the defendant what is at stake if his conduct continues." *Ames*, 2012 IL App 4th 110513, ¶ 38.

¶ 65 In *Ames*, this court ultimately held the trial court committed reversible error because it never admonished defendant pursuant to Rule 401(a). This court noted the trial court there "could have—and should have—repeatedly admonished defendant pursuant to Rule 401(a). The court should also have emphasized that his conduct could constitute his waiver of counsel." *Ames*, 2012 IL App 4th 110513, ¶ 38.

¶ 66 In *Lesley*, the Third District applied *Ames* to hold the trial court erred when it found the trial court never warned the defendant he could lose his right to appointed counsel if his misconduct toward his attorney continued. In doing so, the court stated, "In the absence of such a warning, defendant's repeated failure to cooperate with his appointed counsel cannot be construed as a knowing waiver." *Lesley*, 2017 IL App (3d) 140793, ¶ 21.

¶ 67 Our supreme court reversed the appellate court in *Lesley* based on the facts, finding the defendant had been sufficiently warned, but it applied the same law. *Lesley*, 2018 IL 122100, ¶ 60. Addressing waiver of counsel by conduct, the court favorably cited cases holding

defendants who were warned of the consequences of their failure to cooperate were appropriately found to have waived their right to counsel by conduct. See *Lesley*, 2018 IL 122100, ¶ 53 (collecting cases). The court further stated, while it declined to impose specific requirements of trial courts faced with difficult defendants, "we instruct them to warn defendants of the consequences of their repeated refusals to work with appointed counsel and the difficulties of self-representation before requiring them to proceed *pro se*." *Lesley*, 2018 IL 122100, ¶ 61.

¶ 68    Here, the Third District in the first appeal expressly noted, even if it found the record conclusively established defendant engaged in misconduct resulting in his waiver of counsel, the record did not clearly indicate the trial court provided the necessary warnings before it denied defendant's right to counsel. *Payton*, 2017 IL App (3d) 150673-U, ¶ 27. However, the trial court did not address the issue of a warning on remand or apply the law set forth by the Third District. Instead, the court relied on two distinguishable cases involving the lack of Rule 401(a) admonitions when the court did not entirely discharge counsel. : *Myles* and *Timmons*. Indeed, the record of the second-stage hearing, which occurred nearly five years after the remand, indicates the trial court and the parties did not specifically discuss the remand and referred to the proceeding as if the trial court had advanced the petition from the first to the second stage. On remand, if it becomes applicable, the court should apply the law pertaining to the warning that must be given before a court denies a defendant counsel based on waiver of counsel by misconduct.

¶ 69    Regarding Rule 401(a) admonitions, those were also required if defendant waived his right to counsel by conduct. In that regard, the Third District, in the first appeal, noted an argument by the State that earlier Rule 401(a) admonitions were sufficient to satisfy Rule 401(a) requirements. The appellate court found the issue presented a question of law as to whether the

earlier admonition, which was provided when defendant voluntarily elected to proceed *pro se*, carried through to the proceedings where the court denied defendant's right to counsel. *Payton*, 2017 IL App (3d) 150673-U, ¶ 27.

¶ 70 Regarding that question of law, we note the issue is currently pending before our supreme court. *People v. Ratliff*, 2022 IL App (3d) 210194-U, *petition for leave to appeal allowed*, No. 129356 (Mar. 29, 2023). Because there are underlying factual issues that could preclude this issue arising on remand, and because the outcome of that appeal could affect a determination of whether any Rule 401(a) admonitions or warnings to defendant about the effects of his conduct must be contemporaneously addressed with the denial of counsel issue, we decline to address the law on that issue at this juncture.

¶ 71                                    III. CONCLUSION

¶ 72 For the reasons stated, defendant made a substantial showing of a constitutional claim of the denial of his right to counsel. Accordingly, we reverse the trial court's judgment and remand for third-stage postconviction proceedings.

¶ 73 Reversed and remanded.

¶ 74 PRESIDING JUSTICE DeARMOND, dissenting:

¶ 75 I respectfully dissent. I would find defendant failed to make a substantial showing of a constitutional claim that he was denied his right to counsel as the result of waiver by conduct. The record reveals defendant engaged in an intentional abuse of the court process, dilatory tactics, and repeated efforts to manipulate the trial court into appointing standby counsel or counsel who would follow his direction, regardless of its legal or strategic propriety. Further, I believe the court properly admonished defendant, as contemplated by Rule 401(a), when it repeatedly explained, or attempted to explain, the dangers of self-representation. Defendant

demonstrated his understanding through his comments, requests, and obvious experience. More importantly, in my opinion, he understood exactly how he was manipulating the system. Ultimately, defendant expressed his desire to proceed pro se, and he eventually avoided trial and obtained a favorable plea agreement. For these reasons, I respectfully dissent.